EUVRARD, Appellant,

v.

THE CHRIST HOSPITAL et al., Appellees.■

[Cite as *Euvrard v. The Christ Hosp.* (2001), 141 Ohio App.3d 572.]

Court of Appeals of Ohio,
First District, Hamilton County.

No. C–000480.

Decided March 23, 2001.

*Leroy E. Euvrard, Jr., pro se.*

*June Smith Tyler* and *Jeffrey Hines,* for appellees.

SUNDERMANN, Judge.

On October 4, 1999, plaintiff-appellant LeRoy E. Euvrard, Jr. filed a complaint against defendants-appellees, The Christ Hospital and Health Alliance (collectively, "the hospital"), seeking to recover damages for breach of contract. According to the complaint, Euvrard was approved by his insurer, ChoiceCare/Humana, to have surgery at Christ Hospital. As part of the admission process, Euvrard was required to complete a form from Christ Hospital stating that he would be responsible for all medical charges that he incurred as a result of the surgery. Euvrard signed the form, but he attempted to limit his financial obligation to $100. Due to that written addition to the form, Euvrard was denied admission. Thereafter, Christ Hospital sent a letter to Euvrard stating that it would not provide medical service to him until he agreed to sign the form without a financial limitation. Euvrard claimed that Christ Hospital's refusal to provide medical services resulted in a breach of ChoiceCare/Humana's contract with the hospital, to which he was a third-party beneficiary. According to the complaint, the hospital had entered into an agreement with ChoiceCare/Humana under which Christ Hospital was considered one of ChoiceCare/Humana's participating hospitals, ChoiceCare/Humana was financially responsible for "covered services," and the hospital would not seek payment directly from ChoiceCare/Humana members, except for approved copayments. Essentially, Euvrard maintained that, as a third-party beneficiary to that contract, he was liable to the hospital only for a copayment, and that the hospital could not otherwise require him to be financially liable for other services. As a result, Euvrard requested damages for "pain, suffering, humiliation, and public embarrassment" for not having the surgery performed.

The hospital filed an answer to the complaint on November 4, 1999. In the answer, the hospital maintained that there was no breach of any contract, and that any injury suffered by Euvrard was a result of his own, voluntary actions.

Thereafter, the hospital moved under Civ.R. 12(b)(6) to dismiss the complaint for failure to state a claim upon which relief could be granted. It argued in support of the motion that Euvrard had not sustained any damages because the surgery had yet to be performed. When it granted the motion, the trial court stated only that "[u]pon consideration of the motion, memorandum filed in support thereof, memorandum in opposition and case law, this Court finds Defendants' motion to dismiss to be well taken." This appeal followed.

Preliminarily, we address the trial court's approach to the motion to dismiss. As the hospital aptly points out, because it filed the motion after the close of the pleadings, it should have been considered as a Civ.R. 12(C) motion for judgment on the pleadings, not as a motion to dismiss under Civ.R. 12(B)(6). While a Civ.R. 12(B)(6) motion to dismiss must be determined on the face of the

complaint alone, a Civ.R. 12(C) motion permits a court to consider the complaint and the answer in deciding whether the movant is entitled to judgment as a matter of law.[1] The Ohio Supreme Court has held that an untimely Civ.R. 12(B)(6) motion may be treated as a Civ.R. 12(C) motion for judgment on the pleadings.[2] Because the hospital filed the motion to dismiss after filing its answer in the instant case, we address the trial court's ruling as a resolution of Euvrard's breach-of-contract claim as a matter of law under Civ.R. 12(C).[3]

To grant a judgment on the pleadings, the trial court must construe the material allegations in the complaint, as well as reasonable inferences arising from them, in favor of the plaintiff and conclude beyond a doubt that the plaintiff can show no set of facts that would entitle him to relief.[4] Appellate review is, therefore, *de novo*, which requires an independent determination of whether judgment has properly been entered as a matter of law.[5]

In this case, Euvrard identifies the occurrence of the following errors in his first and second assignments: (1) that the court erred in not allowing "full" discovery, and (2) that the court erred in failing to allow oral argument. Basically, in both assignments of error, Euvrard argues that extrinsic evidence beyond the pleadings should have been permitted. But because the trial court's inquiry was restricted under Civ.R. 12(C) solely to the allegations in the pleadings, the court was not permitted to consider evidence outside of the pleadings when ruling on the hospital's motion. As a result, it would have been error to rely on any interrogatories, discovery, or oral arguments. The first and second assignments of error are, therefore, overruled.

In his third and fourth assignments of error, Euvrard argues that the trial court erroneously ruled that there was no breach of contract, and that it abused its discretion in granting the hospital's motion.

---

**1.** See *State ex rel. Midwest Pride IV, Inc. v. Pontious* (1996), 75 Ohio St.3d 565, 569–570, 664 N.E.2d 931, 936.

**2.** See *id.; State ex rel. Pirman v. Money* (1994), 69 Ohio St.3d 591, 592, 635 N.E.2d 26, 28; *Lin v. Gatehouse Constr. Co.* (1992), 84 Ohio App.3d 96, 99, 616 N.E.2d 519, 521.

**3.** There is no indication here that the trial court converted the motion to dismiss into a summary-judgment motion under Civ.R. 56, by considering any factual data beyond the pleadings.

**4.** See *State ex rel. Findlay Publishing Co. v. Hancock Cty. Bd. of Commrs.* (1997), 80 Ohio St.3d 134, 136, 684 N.E.2d 1222, 1224; *State ex rel. Midwest Pride IV, Inc. v. Pontious, supra*, at 570, 664 N.E.2d at 936; *Lin v. Gatehouse Constr. Co., supra*.

**5.** See *State ex. rel. Midwest Pride IV, Inc. v. Pontious, supra; Lin v. Gatehouse Constr. Co., supra; Peterson v. Teodosio* (1973), 34 Ohio St.2d 161, 166, 63 O.O.2d 262, 264–265, 297 N.E.2d 113, 117.

■ In our view, the trial court's ruling was not an exercise of discretion, but was instead a determination as a matter of law that Euvrard's claim was not ripe for consideration. The Ohio Supreme Court has stated,

"The basic principle of ripeness may be derived from the conclusion that 'judicial machinery should be conserved for problems which are real or present and imminent, not squandered on problems which are abstract or hypothetical or remote.' " [6]

■ Thus, the ripeness doctrine involves a question of timing, such that the doctrine is applied "to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies * * *." [7]

■ Essentially, we are asked here to determine whether there was any basis for recognizing a breach of contract between ChoiceCare/Humana and the hospital as a result of the denial of medical services to Euvrard. The pleadings alleged that ChoiceCare had an obligation to pay for covered services. In its letter denying services, which was attached to the complaint,[8] the hospital stated that it had not breached its agreement with ChoiceCare by refusing treatment to Euvrard because, under the terms of that agreement, "[a] covered patient [wa]s only required to pay the co-pay required by their insurer and any patient convenience items that [we]re not covered by the insurance company." Based on that, the hospital reasoned that it could require the patient to pay for noncovered services.

Even construing the pleadings in the light most favorable to Euvrard, we agree that this issue is not ripe for review because Euvrard has not had the surgery and, as a result, has not incurred any financial obligation that may be said to result from any breach of contract. Further, consideration of this complaint at this juncture would require the trial court to consider what, if any, unanticipated complications may arise during the surgery, whether they would be considered covered or uncovered patient-convenience services, and how much, if any, financial liability Euvrard would incur as a result of those unanticipated services.

---

6. *State ex. rel. Elyria Foundry Co. v. Industrial Comm. of Ohio* (1998), 82 Ohio St.3d 88, 89, 694 N.E.2d 459, 460, quoting comment, Mootness and Ripeness: The Postman Always Rings Twice (1965), 65 Colum.L.Rev. 867, 876.

7. *Id.,* citing *Abbott Laboratories v. Gardner* (1967), 387 U.S. 136, 148, 87 S.Ct. 1507, 1515, 18 L.Ed.2d 681, 691.

8. Under Civ.R. 10(C), "[a] copy of any written instrument attached to a pleading is a part thereof for all purposes." As a result, the copies of the hospital's letter were properly before the trial court when it ruled in the hospital's favor.

Because we are convinced as a matter of law that this type of analysis is premature at this time, we hold that the hospital's motion for judgment on the pleadings was properly granted. We, therefore, overrule the third and fourth assignments of error, and affirm the trial court's judgment.

*Judgment affirmed.*

WINKLER, J., concurs.

PAINTER, P.J., dissents.

PAINTER, Presiding Judge, dissenting.

Euvrard was a third-party beneficiary of ChoiceCare/Humana's contract with Christ Hospital, and a direct party to his own contract with ChoiceCare/Humana. He sought only that coverage to which he was clearly entitled. Instead, the hospital asked him to sign an unlimited guarantee of expenses, which could result in bankruptcy for most normal people. When Euvrard attempted to assert his contractual rights, he was refused the surgery that was surely covered by both contracts.

The language in the adhesion contract the hospital asked Euvrard to sign was unlimited—he would be obligated to pay anything that ChoiceCare/Humana did not pay—in direct contravention of ChoiceCare/Humana's contract with Christ Hospital.

Seldom have I seen a more blatant breach of contract. If we are to refuse to decide the issue until it is "ripe," we might very well not have jurisdiction then, for the matter would be in the bankruptcy court. Daily, people are placed in this untenable position. We should put a stop to it now.