[Cite as *Wilson v. Durrani*, 2019-Ohio-3880.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| ROBERT WILSON, | : | APPEAL NO. C-180196 |
| | | TRIAL NO. A-1506860 |
| Plaintiff-Appellant, | : | |
| | | |
| vs. | : | |
| | | |
| ABUBAKAR ATIQ DURRANI, M.D., | : | |
| | | |
| CENTER FOR ADVANCED SPINE TECHNOLOGIES, INC., | : | |
| | | |
| WEST CHESTER HOSPITAL, LLC, | : | |
| | | |
| and | : | |
| | | |
| UC HEALTH, | : | |
| | | |
| Defendants-Appellees. | : | |

| | | |
|---|---|---|
| MIKE SAND, | : | APPEAL NO. C-180194 |
| | | TRIAL NO. A-1506694 |
| and | : | |
| | | *OPINION.* |
| AMBER SAND, | : | |
| | | |
| Plaintiffs-Appellants, | : | |
| | | |
| vs. | : | |
| | | |
| ABUBAKAR ATIQ DURRANI, M.D., | : | |
| | | |
| CENTER FOR ADVANCED SPINE TECHNOLOGIES, INC., | : | |
| | | |
| WEST CHESTER HOSPITAL, LLC, | : | |
| | | |
| and | : | |
| | | |
| UC HEALTH, | : | |
| | | |
| Defendants-Appellees. | : | |

Civil Appeals From:   Hamilton County Court of Common Pleas

Judgments Appealed From Are:   Reversed and Cause Remanded

Date of Judgment Entry on Appeal:   September 25, 2019

*Robert A. Winter Jr., The Deters Law Firm, P.S.C.,* and *Fred Johnson* for Plaintiffs-Appellants,

*Lindhorst & Dreidame Co., LPA, Michael F. Lyon, James F. Brockman* and *James L. O'Connell*, for Defendants-Appellees Abubakar Atiq Durrani and Center for Advanced Spine Technologies, Inc.,

*Frost Brown Todd, LLC, Douglas R. Dennis* and *Austin W. Musser*, for Defendants-Appellees West Chester Hospital, LLC, and UC Health.

ZAYAS, **Presiding Judge**.

{¶1} Appellants Robert Wilson, Mike Sand and his wife, Amber Sand (collectively, the "appellants"), appeal from judgments entered by the Hamilton County Court of Common Pleas granting judgment on the pleadings to appellees Dr. Abubakar Atiq Durrani, the Center for Advanced Spine Technologies, Inc., West Chester Hospital, LLC, and UC Health. Although the appellants instituted separate appeals from separate judgments and we previously denied motions to consolidate their appeals, the appellants advance identical assignments of error pertaining to very similar facts. We, therefore, consolidate their appeals for purposes of this opinion.

{¶2} These consolidated appeals are two of many appeals involving alleged malpractice by Dr. Durrani, a spine surgeon who fled the country for his native Pakistan following a federal indictment. In both cases before us, Dr. Durrani, his clinic, and a hospital argued in the trial court that the claims filed against them by a patient were untimely under the medical malpractice statute of repose, a statute which bars medical claims filed more than four years after the alleged malpractice, and that Ohio's saving statute does not apply to allow actions to survive beyond this expiration. The trial court agreed, holding in each case that the saving statute did not apply, and therefore, the patient's claims were barred.

{¶3} The Ohio Supreme Court explicitly reserved judgment on this issue in *Antoon v. Cleveland Clinic Found.*, 148 Ohio St.3d 483, 2016-Ohio-7432, 71 N.E.3d 974. The United States District Court for the Southern District of Ohio was presented with this very question recently though, and upon surveying *Antoon*, Ohio appellate court decisions, and other state court results, concluded that Ohio's saving statute does apply despite the expiration of the statute of repose. *See Atwood v. UC Health*, S.D.Ohio No. 1:16CV593, 2018 WL 3956766 (August 17, 2018). We find

3

*Atwood* persuasive and reverse the trial court's judgments. In a matter of first impression for this court, we hold that Ohio's saving statute, properly invoked, allows actions to survive beyond expiration of the medical malpractice statute of repose, and acts to save the patients' claims in the cases before us.

## I. Background and Procedural History

### A. Robert Wilson

{¶4} In November 2010, plaintiff-appellant Robert Wilson began seeing Dr. Durrani at his clinic in Blue Ash, Ohio, the Center for Advanced Spine Technologies, Inc., ("CAST") seeking relief from headaches and back pain. Dr. Durrani recommended that Wilson undergo back surgery to repair discs along his spine. In February and April 2011, Dr. Durrani performed spine surgeries on Wilson at West Chester Hospital, which is owned by UC Health. Following the surgeries, Wilson experienced worsened pain and immobility. Wilson eventually decided to sue Dr. Durrani, claiming that the surgeries were medically unnecessary and improperly performed.

{¶5} On April 9, 2013, Wilson filed a complaint against Dr. Durrani, CAST, and West Chester Hospital/UC Health in the Butler County Court of Common Pleas. Wilson sued Dr. Durrani for negligence, battery, intentional infliction of emotional distress, fraud, and spoliation of evidence. Wilson sued CAST for vicarious liability for the negligent and improper acts of Dr. Durrani, negligent hiring, retention and supervision of Dr. Durrani, fraud, intentional infliction of emotional distress, and spoliation of evidence. Wilson sued West Chester Hospital/UC Health for negligence, negligent credentialing, supervision and retention, fraud, intentional infliction of emotional distress, and spoliation of evidence.

{¶6} On December 11, 2015, Wilson voluntarily dismissed his complaint filed in the Butler County Court of Common Pleas under Civ.R. 41(A)(1)(a), and, on

December 16, 2015, filed a similar, albeit much longer, complaint in the Hamilton County Court of Common Pleas. Wilson added more specific factual allegations based upon discovery disclosed in the Butler County case, and added a claim against Dr. Durrani for lack of informed consent for the use of a product called Infuse/BMP-2 during both surgeries, and claims against CAST and West Chester Hospital/UC Health for violations of the Ohio Consumer Sales Practices Act.

{¶7} Dr. Durrani and CAST, and West Chester Hospital/UC Health moved separately for judgment on the pleadings, asserting that Wilson's claims against them were medical claims that were time-barred pursuant to Ohio's medical malpractice statute of repose, R.C. 2305.113(C), because the complaint alleges that the last surgery performed by Dr. Durrani was in or around April 2011, more than four years before Wilson filed suit in the Hamilton County Court of Common Pleas. The defendants argued that the 2013 filing in the Butler County Court of Common Pleas was a nullity.

{¶8} Wilson moved to amend his complaint to elaborate on the fraud claims and to add a RICO claim. The trial court entered decisions granting the motions for judgment on the pleadings and denying Wilson's motion for leave to amend his complaint.

### B. Mike and Amber Sand

{¶9} In or around 2008 or 2009, plaintiff-appellant Mike Sand began seeing Dr. Durrani to address weakness in his left leg. Dr. Durrani urged Sand to undergo back surgery to repair discs along his spine, or else lose the use of his leg. On April 5, 2010, Dr. Durrani performed spine surgery on Sand at West Chester Hospital. Following his surgery, Sand experienced the same leg pain he had prior to the surgery, and began experiencing back pain which severely limited his mobility.

Like Wilson, Sand decided to sue Dr. Durrani, claiming that the surgery was medically unnecessary and improperly performed.

{¶10}  On March 28, 2013, Sand, and his wife, Amber Sand (collectively, "the Sands"), filed a complaint against Dr. Durrani, CAST, and West Chester Hospital/UC Health in the Butler County Court of Common Pleas.  The Sands sued Dr. Durrani for negligence, battery, intentional infliction of emotional distress, fraud, spoliation of evidence, and loss of consortium. The Sands sued CAST for intentional infliction of emotional distress, spoliation of evidence, and loss of consortium.  The Sands sued West Chester Hospital/UC Health for negligence, vicarious liability, negligent hiring, credentialing, supervision and retention, fraud, intentional infliction of emotional distress, spoliation of evidence, and loss of consortium.

{¶11} On November 25, 2015, the Sands voluntarily dismissed their complaint filed in the Butler County Court of Common Pleas under Civ.R. 41(A)(1)(a), and, on December 9, 2015, filed a similar complaint in the Hamilton County Court of Common Pleas.  The Sands added more specific factual allegations based upon discovery disclosed in the Butler County case, and added a claim against Dr. Durrani for lack of informed consent and claims against CAST for vicarious liability, and negligent hiring, credentialing, supervision and retention.

{¶12}  Asserting the same arguments from Wilson's case, Dr. Durrani and CAST, and West Chester Hospital/UC Health moved separately for judgment on the pleadings. The Sands moved to amend their complaint to elaborate on the fraud claims and to add a RICO claim.  The trial court entered decisions granting the motions for judgment on the pleadings and denying the Sands' motion for leave to amend their complaint.

{¶13}  Wilson and the Sands now appeal, asserting the same two assignments of error for review.

6

## II. Legal Analysis

{¶14}  In their first assignment of error, the appellants assert that the trial court erred in granting judgment on the pleadings, arguing that Ohio's saving statute, R.C. 2305.19(A), allows their claims to survive beyond the expiration of the four-year medical malpractice statute of repose, R.C. 2305.113(C).  The appellants also argue that the trial court misapplied *Antoon v. Cleveland Clinic Found.*, 148 Ohio St.3d 483, 2016-Ohio-7432, 71 N.E.3d 974, when it determined that the voluntary dismissal of their Butler County complaints precluded the filing of their Hamilton County complaints when the later filings were outside of the four-year time period.

{¶15}  In order to grant a judgment on the pleadings, "the trial court must construe the material allegations in the complaint, as well as reasonable inferences arising from them, in favor of the plaintiff and conclude beyond a doubt that the plaintiff can show no set of facts that would entitle him to relief."  (Internal citations omitted.)  *Euvrard v. The Christ Hosp.*, 141 Ohio App.3d 572, 575, 752 N.E.2d 326, 329 (1st Dist.2001).   Our review is de novo, which requires an independent determination of whether judgment has properly been entered as a matter of law.  *Id.*

### Statute of Repose

{¶16}  A statute of repose bars "any suit that is brought after a specified time since the defendant acted * * * even if this period ends before the plaintiff has suffered a resulting injury."  *Antoon*, 148 Ohio St. 3d 483, 2016-Ohio-7432, 71 N.E.3d 974, at ¶ 8, quoting *Black's Law Dictionary* 1637 (10th Ed.2014).  By contrast, a statute of limitations establishes "a time limit for suing in a civil case, based on the date when the claim accrued (as when the injury occurred or was discovered)." *Id.*, quoting *Black's Law Dictionary* 1636 (10th Ed.2014).  While both share the "goal of limiting the time for which a putative wrongdoer must be prepared

to defend a claim," a statute of repose measures this liability from the date of the last culpable act. *Id.*, citing *CTS Corp. v. Waldburger*, 573 U.S. 1, 8, 134 S.Ct. 2175, 189 L.Ed.2d 62 (2014).

{¶17} Ohio's medical malpractice statute of repose provides:

Except as to persons within the age of minority or of unsound mind as provided by section 2305.16 of the Revised Code, and except as provided in division (D) of this section, both of the following apply:

(1) No action upon a medical, dental, optometric, or chiropractic claim shall be commenced more than four years after the occurrence of the act or omission constituting the alleged basis of the medical, dental, optometric, or chiropractic claim.

(2) If an action upon a medical, dental, optometric, or chiropractic claim is not commenced within four years after the occurrence of the act or omission constituting the alleged basis of the medical, dental, optometric, or chiropractic claim, then, any action upon that claim is barred.

R.C. 2305.113(C). Under division (D), an additional year to file suit is provided for those who could not have discovered the injury within three years but discover it in the fourth year, and those with a foreign object left in their bodies. R.C. 2305.113(D).

{¶18} A medical claim is defined as: "any claim that is asserted in any civil action against a physician, * * * [or] hospital * * * that arises out of the medical diagnosis, care, or treatment of any person." R.C. 2305.113(E)(3). It includes the following:

(a) Derivative claims for relief that arise from the medical diagnosis, care, or treatment of a person;

* * *

8

(c) Claims that arise out of the medical diagnosis, care, or treatment of any person or claims that arise out of the plan of care prepared for a resident of a home and to which both types of claims either of the following applies:

(i) The claim results from acts or omissions in providing medical care.

(ii) The claim results from the hiring, training, supervision, retention, or termination of caregivers providing medical diagnosis, care, or treatment.

*Id.*

{¶19} In another Durrani case, brought against all but one of these same defendants, this court determined that similar claims for negligence, negligent credentialing and retention, fraud, and violations of the Ohio Consumer Sales Practices Act were "medical claims" subject to the statute of repose. *Young v. Durrani*, 2016-Ohio-5526, 61 N.E.3d 34, ¶ 18-25 (1st Dist.). In that case, we concluded that the claims ultimately arose out of the care or treatment of the patient and were thus medical claims consistent with the statutory definition. *Id.*; *see also Hensley v. Durrani*, 1st Dist. Hamilton No. C-130005, 2013-Ohio-4711 (concluding that claims for fraud and lack of informed consent were medical claims). Accordingly, the claims asserted by the appellants in these consolidated appeals are medical claims.

### Saving Statute

{¶20} Ohio's saving statute provides:

In any action that is commenced or attempted to be commenced, if in due time a judgment for the plaintiff is reversed or if the plaintiff fails otherwise than upon the merits, the plaintiff or, if the plaintiff dies and the cause of action survives, the plaintiff's representative may

commence a new action within one year after the date of the reversal of the judgment or the plaintiff's failure otherwise than upon the merits or within the period of the original applicable statute of limitations, whichever occurs later. This division applies to any claim asserted in any pleading by a defendant.

R.C. 2305.19(A). Under division (C), the saving statute does not apply to certain actions in probate. R.C. 2305.19(C).

{¶21} Where the saving statute applies, "the date for filing the new action relates back to the filing date for the preceding action for limitations purposes." *Frysinger v. Leech*, 32 Ohio St.3d 38, 42, 512 N.E.2d 337 (1987). The Ohio Supreme Court has held that, as a remedial statute, the saving statute "should be given a liberal construction to permit the decision of cases upon their merits rather than upon mere technicalities of procedure." *Cero Realty Corp. v. Am. Mfrs. Mut. Ins. Co.*, 171 Ohio St. 82, 85, 167 N.E.2d 774 (1960); *see Gruelich v. Monnin*, 142 Ohio St. 113, 116, 50 N.E.2d 310 (1943) (holding likewise that a saving statute should be liberally construed so as not to deny a litigant the right to commence a new action after a previous one has failed otherwise than upon the merits); *see also Kinney v. Ohio Dept. of Adm. Svcs.*, 30 Ohio App.3d 123, 126, 507 N.E.2d 402 (10th Dist.1986) (describing the policy considerations for liberally construing the saving statute to apply to a statute of limitations).

**The Saving Statute Applies to Medical Malpractice Claims**

{¶22} In *Atwood v. UC Health*—incidentally, another Durrani case—the court noted that "[i]n several instances, Ohio courts have assumed without any discussion that Ohio's savings statute is applicable to medical malpractice claims." *Atwood*, S.D.Ohio No. 1:16CV593, 2018 WL 3956766, at *6. *See Saunders v. Choi*, 12 Ohio St.3d 247, 250, 466 N.E.2d 889 (1984) (stating that R.C. 2305.19 "provided

[the] appellant with another opportunity to revive her cause of action which would have been otherwise time-barred, but for this savings provision."); *Frysinger*, 32 Ohio St.3d 38, 512 N.E.2d 337 (holding that R.C. 2305.19 applied to save a medical-malpractice action dismissed under Civ.R. 41(A)(1)(a)); *Rall v. Arora*, 3d Dist. Marion No. 9-12-56, 2013-Ohio-1392, ¶ 20 (concluding that R.C. 2305.19 could not save medical-malpractice claims in plaintiffs' third complaint as the saving statute can only be used once).

{¶23} This was also true for *Antoon*, 148 Ohio St. 3d 483, 2016-Ohio-7432, 71 N.E.3d 974. The Ohio Supreme Court assumed that the saving statute applied to medical claims in *Antoon*, but specifically declined to go into further discussion due to the facts presented. In *Antoon*, the court upheld the constitutionality of the medical malpractice statute of repose, reaffirming its earlier position in *Ruther v. Kaiser*, 134 Ohio St.3d 408, 2012-Ohio-5686, 983 N.E.2d 291. In *Ruther*, the court explained that R.C. 2305.113(C) is "a true statute of repose," which " 'exists to give medical providers certainty with respect to the time within which a claim can be brought and a time after which they may be free from the fear of litigation.' " *Antoon* at ¶ 22, quoting *Ruther* at ¶ 19. The court reasoned that otherwise, " 'if the General Assembly cannot legislate a statute of repose, medical providers are left with the possibility of unlimited liability indefinitely.' " *Id.* Ultimately, the court held the four-year expiration permissible because "a party need not be granted an unlimited amount of time to bring a vested cause of action, but must receive only a 'reasonable' amount of time in order for a law to pass constitutional muster." (Internal citations omitted.) *Antoon* at ¶ 28.

{¶24} The plaintiffs in *Antoon* had originally filed their complaint in the Cuyahoga County Court of Common Pleas in 2010 alleging medical malpractice and derivative claims against a clinic and the doctors who provided them care in 2008. A

year later, the plaintiffs dismissed their claims without prejudice. While the case was pending, the plaintiffs filed a number of actions in federal court and with federal agencies—all related to the surgeries, but not alleging medical malpractice and not seeking damages. The federal claims were eventually dismissed. In 2013, the plaintiffs refiled their complaint in the Cuyahoga County Court of Common Pleas, again alleging medical malpractice.

{¶25} The court found the plaintiffs' claims barred by the statute of repose, rejecting the plaintiffs' assertion that "filing then dismissing a claim will indefinitely suspend the statute of repose by 'commencing' the suit on the date of the first filing." *Id.* at ¶ 24. Rather, no action "commenced" until the complaint was filed in 2013, more than four years after the act or omission constituting the alleged basis of the medical claim. In clarifying this holding, and reserving judgment on the issue now before us, the court reiterated that "the Ohio saving statute applies only if a party files a substantially similar action within one year of the dismissal without prejudice." *Id.* at ¶ 31, citing *Children's Hosp. v. Ohio Dept. of Pub. Welfare*, 69 Ohio St.2d 523, 525, 433 N.E.2d 187 (1982). Because the plaintiffs' federal actions did not expressly assert medical-malpractice claims, they were not "substantially the same" as the state court action, and the saving statute did not apply. *Id.* at ¶ 32.

{¶26} In the cases before us, by contrast, the appellants' claims in their Butler County complaints and their Hamilton County complaints are nearly identical. The appellants merely added a claim against Dr. Durrani for lack of informed consent to the surgeries, and, in the Sands' case, added claims against CAST for vicarious liability and negligent hiring, and, in Wilson's case, added claims against West Chester Hospital/UC Health for violations of the Ohio Consumer Sales Practices Act. All of the parties named in the voluntarily-dismissed Butler County complaints were named again in the Hamilton County complaints—that is, every

12

party named in the appellants' new actions had been put on notice in the initial action. Thus, the appellants avoided the allegation that their complaints were not substantially the same.

{¶27} However, the trial court, citing to *Antoon*, determined that the appellants' voluntary dismissal of their Butler County complaints pursuant to Civ.R. 41 meant the action was a nullity and was not to be considered for purposes of the four-year computation under the statute of repose. *Antoon* indeed states, in applying the statute of repose, that an action that has been dismissed without prejudice is deemed to never have existed. *Antoon* at ¶ 24, citing *De Ville Photography, Inc. v. Bowers*, 169 Ohio St. 267, 272, 159 N.E.2d 443 (1959). This statement was in reference to the plaintiffs' argument that filing and then dismissing a claim will indefinitely suspend the statute of repose by "commencing" the suit on the date of the first filing—it was not in reference to the saving statute. After all, the saving statute could effectively never apply if an action that has been dismissed without prejudice is deemed to never have existed: the filing date for the new action could not relate back to the filing date for the preceding action if the preceding action was considered a nullity.

{¶28} Only one appellate court has addressed the application of the saving statute to medical claims in light of the statute of repose. *Wade v. Reynolds*, 34 Ohio App.3d 61, 517 N.E.2d 227 (10th Dist.1986), involved an earlier version of the statute of repose, which applied to medical claims "regardless of legal disability and notwithstanding section 2305.16 of the Revised Code." In *Wade*, the plaintiff timely filed her complaint for medical malpractice on October 31, 1980. The complaint was dismissed for reasons other than failure upon the merits on March 21, 1984, and was then refiled on March 21, 1985. The Tenth District determined that because the

13

statute of repose contained enumerated exceptions which did not include the saving statute, the saving statute must apply to save the plaintiff's claim. *Id.* at 62.

{¶29} *Atwood* pointed out, however, that "[t]he express exceptions, or lack thereof, say little about legislative intent." *Atwood*, S.D.Ohio No. 1:16CV593, 2018 WL 3956766, at *7. Quoting a decision critical of *Wade* from the United States Court of Appeals for the Seventh Circuit, the court noted that the exceptions rationale "'could have just as easily cut the other way'" because the "'legislature apparently knew how to write exceptions into [the statute of repose], but failed to except the saving statute.'" *Id.*, quoting *Hinkle by Hinkle v. Henderson*, 85 F.3d 298, 304 (7th Cir.1996). Dr. Durrani and CAST made the argument in *Atwood*, as they do here, that the statute of repose for product-liability claims, R.C. 2305.10(C)(1), contains a specific exception for the saving statute. The *Atwood* court responded that in 2009 the General Assembly added exceptions to the saving statute, explicitly stating that the saving statute does not apply to certain probate proceedings. *Atwood* at *7. In other words, just as the legislature could have included the saving statute as an exception in the statute of repose, the legislature could have included the statute of repose as an exception in the saving statute—but unfortunately, it did neither. Thus, we likewise find arguments regarding legislative intent unpersuasive.

{¶30} While legislative intent is indeterminate, the policy considerations are not. As Judge Barrett noted in *Atwood*, the Ohio Supreme Court has explained that "the General Assembly made a policy decision to grant Ohio medical providers the right to be free from litigation based on alleged acts of medical negligence occurring outside a specified time period." *Ruther*, 134 Ohio St.3d 408, 2012-Ohio-5686, 983 N.E.2d 291, at ¶ 21. The medical malpractice statute of repose gives "medical providers certainty with respect to the time within which a claim can be brought and a time after which they may be free from the fear of litigation." *Id.* at ¶ 19.

14

Forcing medical providers to defend against medical claims that occurred 10, 20, or 50 years before presents a host of litigation concerns, including the risk that evidence is unavailable through the death or unknown whereabouts of witnesses, the possibility that pertinent documents were not retained, the likelihood that evidence would be untrustworthy due to faded memories, the potential that technology may have changed to create a different and more stringent standard of care not applicable to the earlier time, the risk that the medical providers' financial circumstances may have changed—i.e., that practitioners have retired and no longer carry liability insurance, the possibility that a practitioner's insurer has become insolvent, and the risk that the institutional medical provider may have closed.

*Id.* at ¶ 19-20. Thus, the two goals of the statute of repose are "to eliminate indefinite potential liability and to give defendants greater certainty and predictability." *Hinkle by Hinkle*, 85 F.3d at 303.

{¶31} These policy considerations are not at odds with those of the saving statute. As discussed above, the saving statute is given a liberal construction to permit the decision of cases upon their merits rather than technicalities. Since the saving statute is only available to plaintiffs who timely commenced their claims, the statute is compatible with the first goal of the statute of repose—at most, extending the statute of repose by one year. With regard to the second goal, certainty and predictability are only affected where the defendant is unaware that the first action was filed. *Id.*

Where the defendant knows that plaintiff has brought an action, usually from receiving service, he must be presumed to understand that a procedural defect in the action may cause a delay of up to one

15

year pursuant to the savings statute. In such a case, his level of certainty and predictability is no less than in any other litigated matter, and the purpose of the statute of repose is still realized.

(Internal citations omitted.) *Id.* Accordingly, we conclude that the saving statute, properly invoked, allows actions to survive beyond expiration of the medical malpractice statute of repose.[1]

{¶32} The appeals before us are perhaps a better illustration of the policy considerations for the application of the saving statute than the statute of repose. These appeals involve the same plaintiffs suing the same defendants for almost identical causes of action in complaints that were voluntarily dismissed in one jurisdiction and filed in another jurisdiction in five days' time, in Wilson's case, and 15 days' time, in the Sands' case. While restricting indefinite liability is a reasonable policy consideration, it was barely a consideration of the defendants here, who knew they were being sued in a timely-filed action in Butler County. And, as far as certainty and predictability go, the same is true. The defendants knew the plaintiffs brought actions against them, as they were evidently served the complaints and had engaged in discovery in the actions maintained in Butler County. Consequently, as the resolution of cases upon technicalities of procedure is disfavored, *see Cero Realty Corp.,* 171 Ohio St. 82, 167 N.E.2d 774, we hold that the saving statute applies to save the appellants' claims and sustain the appellants' first assignment of error.

{¶33} Finally, in their second assignment of error, the appellants assert that the trial court erred in denying their motions for leave to file amended complaints.

---

[1] We note that this case is different from the recently-decided case of *Freeman v. Durrani*, 1st Dist. Hamilton No. C-180197, 2019-Ohio-3643, wherein this court was asked to create a fraud exception and equitable-estoppel exception to Ohio's medical malpractice statute of repose but refused. In this case, unlike *Freeman*, we are tasked with harmonizing coexisting statutes that do not definitively speak to the question at hand. The only harmonious construction that does not frustrate the purpose of either statute is to create a saving-statute exception to the medical malpractice statute of repose.

The trial court denied the appellants leave on the basis that their amendments would be futile as time barred under the medical malpractice statute of repose. In light of the preceding analysis, we sustain the appellants' second assignment of error and remand for further consideration of the motions for leave.

**Conclusion**

{¶34} We sustain the appellants' first and second assignments of error, reverse the trial court's judgments, and remand the cause for further proceedings consistent with the law and this opinion.

Judgments reversed and cause remanded.

**BERGERON** and **CROUSE, JJ.**, concur.

Please note:

    The court has recorded its own entry on the date of the release of this opinion.