[Cite as *McNeal v. Durrani*, 2019-Ohio-5351.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| KAMERON MCNEAL, | : | APPEAL NOS. C-180554 |
| and | | C-180634 |
| | : | TRIAL NO. A-1503653 |
| LAUREN MCNEAL, | : | |
| Plaintiffs-Appellants, | : | |
| vs. | : | |
| ABUBAKAR ATIQ DURRANI, M.D., | : | |
| CENTER FOR ADVANCED SPINE TECHNOLOGIES, INC., | : | |
| CINCINNATI CHILDREN'S HOSPITAL MEDICAL CENTER, | : | |
| and | : | |
| TRIHEALTH, INC., f.d.b.a. "GOOD SAMARITAN HOSPITAL," | : | |
| Defendants-Appellees. | : | |

| | | |
|---|---|---|
| BRADLEY ARNOLD, | : | APPEAL NO. C-180566 |
| Plaintiff-Appellant, | : | TRIAL NO. A-1504450 |
| vs. | : | |
| ABUBAKAR ATIQ DURRANI, M.D., | : | |
| CENTER FOR ADVANCED SPINE TECHNOLOGIES, INC., | : | |
| and | : | |
| CINCINNATI CHILDREN'S HOSPITAL MEDICAL CENTER, | : | |

Defendants-Appellees.                    :

---

R. DAVID SCOTT,                          APPEAL NO. C-180641
                                    :    TRIAL NO. A-1506865
  and
                                    :
MISSY SCOTT,                             *O P I N I O N.*
                                    :
    Plaintiffs-Appellants,
                                    :
  vs.
                                    :
ABUBAKAR ATIQ DURRANI, M.D.,
                                    :
CENTER FOR ADVANCED SPINE
TECHNOLOGIES, INC.,                      :

WEST CHESTER HOSPITAL, LLC,              :

  and                                    :

UC HEALTH, LLC,                          :

    Defendants-Appellees.                :

Civil Appeals From: Hamilton County Court of Common Pleas

Judgments Appealed From Are: Affirmed in C-180554, C-180634 and C-180566;
                                    Reversed and Cause Remanded in C-180641

Date of Judgment Entry on Appeal: December 27, 2019

*The Deters Law Firm, P.S.C.* , *Robert A. Winter,  Jr.,* and *Fred Johnson,* for
Plaintiffs-Appellants Kameron McNeal, Lauren McNeal and Bradley Arnold,

*Strauss Troy Co. LPA* and *Robert R. Sparks* and *Nicholas M. Nighswander, PLLC,*
and *Nicholas M. Nighswander,* for Plaintiffs-Appellants R. David Scott and Missy
Scott,

2

*Bonezzi, Switzer, Polito & Hupp Co., Paul W. McCartney* and *Thomas F. Glassman* and *Lindhorst & Dreidame Co. LPA, Michael F. Lyon, James, F. Brockman* and *James L. O'Connell,* for Defendants-Appellees Abubakar Atiq Durrani and Center for Advanced Spine Technologies, Inc.,

*Rendigs, Fry, Kiely & Dennis, LLP, Michael P. Foley, Thomas M. Evans* and *Jessica L. Worth*, for Defendant-Appellee TriHealth, Inc., f.d.b.a Good Samaritan Hospital,

*Rendigs, Fry, Kiely & Dennis, LLP, Jeffrey M. Hines, Karen A. Carrol* and *Ryan J. Dwyer*, for Defendants-Appellees West Chester Hospital, LLC, and UC Health, LLC,

*Dinsmore & Shohl LLP, J. David Brittingham, Thomas P. Kemp, Jr.*, and *Allison G. Knerr,* for Defendant-Appellee Cincinnati Children's Hospital Medical Center.



**BERGERON, Judge.**

{¶1} In this collection of appeals, consolidated for opinion purposes, we apply our recent decisions in *Freeman v. Durrani*, 1st Dist. Hamilton No. C-180197, 2019-Ohio-3643, and *Wilson v. Durrani*, 1st Dist. Hamilton Nos. C-180196 and C-180194, 2019-Ohio-3880, to resolve similar issues stemming from alleged pervasive malpractice committed by Dr. Abubakar Atiq Durrani. Both sides, to varying degrees, urge us to retreat from these decisions on which the ink is still drying. We resist those invitations, and find the outcome in these appeals largely dictated by our recent precedent. For the reasons explained below, we affirm dismissals in the Arnold and McNeal appeals because the initial suits were commenced outside of the window for the four-year statute of repose, but reverse dismissal in the Scott appeal because the initial complaint was filed within the statute of repose and Ohio's "savings statute" saved the subsequent complaint.

I.

{¶2} Plaintiff-appellant, Bradley Arnold, suffered serious injuries in 2005 upon dislocating his hip in an accident. This injury brought Mr. Arnold within the orbit of Dr. Durrani, who would ultimately perform surgery on his spine in March 2008 at Cincinnati Children's Hospital Medical Center ("CCMHC"). Though a minor when the accident occurred, Mr. Arnold reached adulthood by the time of the surgery.

{¶3} Unfortunately, the surgery failed to alleviate Mr. Arnold's medical issues or the severe pain he continued to experience. Based on the surgery's failure to achieve the anticipated results, and bolstered by another doctor's assessment that one of the screws from the surgery appeared to be touching a nerve, Mr. Arnold eventually brought suit against Dr. Durrani, The Center for Advanced Spine

4

Technologies, Inc., ("CAST") and CCMHC in the Hamilton County Court of Common Pleas in 2013, alleging various claims related to medical malpractice, negligence, and fraud.  Mr. Arnold voluntarily dismissed the complaint pursuant to Civ.R. 41(A) in September 2014, refiling it in August 2015 (in reliance on the savings statute).

{¶4}  Similarly, plaintiff-appellant Kameron McNeal injured his back in 2004 during a wrestling match and, through a doctor's referral, sought the assistance of Dr. Durrani.  Mr. McNeal first underwent surgery with Dr. Durrani in 2005 at CCMHC.  Though a minor at the time of the 2005 surgery, Mr. McNeal reached the age of majority in 2008.

{¶5}  After the 2005 surgery, however, Mr. McNeal continued to experience pain and eventually underwent a second surgery with Dr. Durrani in April 2009.  Instead of fixing the issues, however, the second surgery produced new pain and numbness in Mr. McNeal's hips, legs, and knees.  Due to the unsuccessful nature of the surgeries, Mr. McNeal, along with his wife Lauren, ultimately filed suit against Dr. Durrani, CAST, CCMHC and TriHealth, Inc., (formerly Good Samaritan Hospital) in the Hamilton County Court of Common Pleas in May 2014, but then voluntarily dismissed the suit under Civ.R. 41(A) a few months later in August 2014.  Mr. McNeal eventually refiled the complaint in July 2015.

{¶6}  The last plaintiff-appellant at issue here, Ralph David Scott, underwent six separate surgeries with Dr. Durrani spanning from 2006 through 2011.  The two earliest surgeries occurred in 2006 and 2008 at a hospital not a party to this appeal.  The four later surgeries, occurring in 2010 and 2011, were all performed at West Chester Hospital.  In 2013, Mr. Scott, and his wife Missy Scott, filed the first complaint based on these surgeries in the Common Pleas Court of Butler County and named Dr. Durrani, CAST, West Chester Hospital, LLC, ("WCH")

and UC Health, Inc., (which manages WCH) as defendants. Mr. Scott voluntarily dismissed the case in December 2014 and eventually refiled in Hamilton County the following December 2015.

{¶7} Dr. Durrani, CAST, and the various other defendant hospitals in each case ultimately all moved to dismiss the complaints against them in Hamilton County. In Mr. Arnold's and Mr. McNeal's cases, the defendants moved pursuant to Civ.R. 12(B)(6) for failure to state a claim upon which relief could be granted, and in Mr. Scott's case, they moved for judgment on the pleadings under Civ.R. 12(C). While slightly different procedurally, the substance of the arguments was largely indistinguishable—the defendants in each case asserted that the claims were time-barred by virtue of Ohio's medical malpractice statute of repose. The trial court ultimately agreed with the defendants, dismissing each case on that ground.

{¶8} Messrs. Arnold, McNeal, and Scott (and their respective spouses) all now appeal the respective dismissals of their cases. Mr. Arnold and Mr. McNeal assert two assignments of error, challenging both the dismissal of their cases and the denial of their motions for leave to amend their complaints. Mr. Scott presents three assignments of error, challenging the dismissal of his case as erroneous, the trial court's grant of leave to WCH to amend its answer to add a statute of repose defense, and finally, asserting that the trial court abused its discretion by applying the statute of repose, as Dr. Durrani was no longer a licensed physician.

II.

{¶9} As Mr. Arnold's and Mr. McNeal's appeals implicate the same issues against similar procedural backdrops, we will address them together. The trial court dismissed both of their cases on Civ.R. 12(B)(6) grounds for failure to state a claim upon which relief could be granted. We review a grant of a motion to dismiss

pursuant to Civ.R. 12(B)(6) de novo. *Logossou v. AdvancePierre Foods, Inc.*, 1st Dist. Hamilton No. C-170672, 2019-Ohio-363, ¶ 6. In undertaking this review, we must accept as true all the factual allegations in the complaints, construing them in favor of the nonmoving party, and determine whether, beyond doubt, the plaintiffs can prove no set of facts that would support their claims to the relief sought. *Id.*

## A.

{¶10} We begin with their first assignments of error, which challenge the trial court's determination that R.C. 2305.113(C), Ohio's statute of repose for medical malpractice claims, bars their claims. R.C. 2305.113(C) precludes medical claims "commenced more than four years after the occurrence of the act or omission constituting the alleged basis of the medical * * * claim," providing that any such action "not commenced within four years after the occurrence of the act or omission constituting the alleged basis of the medical claim * * * is barred." Messrs. Arnold and McNeal believe they have found the path around the statute of repose, claiming that Ohio's savings statute, R.C. 2305.19(A), salvages their claims. R.C. 2305.19(A) allows a party to refile a suit in which the case "fails otherwise than upon the merits * * * within one year after the date of * * * the plaintiff's failure otherwise than upon the merits[.]" This provision thus implements a one-year clock between dismissal and refiling to "save" an otherwise untimely claim.

{¶11} We recently explored this issue in depth in *Wilson*, 1st Dist. Hamilton Nos. C-180196 and C-180194, 2019-Ohio-3880. In *Wilson*, we held that R.C. 2305.19(A) could save a party's claim dismissed without prejudice and refiled within one year, even after the statute of repose in R.C. 2305.113(C) ran, when the initial claim was timely filed within the four-year statute of repose period. *See id.* at ¶ 31-32. Thus, the savings statute saved the plaintiffs' refiled suits in *Wilson* not only

because the requisites of R.C. 2305.19(A) were met, but also because they timely initiated their suits within the four-year repose period. *Id.* at ¶ 21, 31. We accordingly concluded "that the saving statute, properly invoked, allows actions to survive beyond the expiration of the medical malpractice statute of repose." *Id.* at ¶ 31. In other words, the refiled suits, although falling outside of the repose period, related back to the timely-filed initial complaints. *See id.*; *see also Frysinger v. Leech,* 32 Ohio St.3d 38, 42, 512 N.E.2d 337 (1987) ("Where R.C. 2305.19 applies, the date for filing the new action relates back to the filing date for the preceding action for limitations purposes.").

{¶12} But *Wilson* does not come to these plaintiffs' aid and resurrect their claims because both of their initial complaints were filed *after* the four-year repose period in R.C. 2305.113(C) ran. The surgery underlying Mr. Arnold's claims occurred in 2008, yet he did not commence suit until 2013, more than four years beyond the date of the surgery. Similarly, the operative dates for Mr. McNeal are 2008 (date of obtaining majority[1]) and 2009 (date of surgery), but he did not file his first suit until 2014.

{¶13} Perhaps anticipating this problem, both plaintiffs try to expand the statute of repose by relying on *Bugh v. Ohio Dept. of Rehab., and Corr.*, 2019-Ohio-112, 128 N.E.3d 906 (10th Dist.), to support their proposition that "the trial court erred by using the surgery date lockstep" in determining that the statute of repose barred their claims. Instead, they propose that the statute of repose runs from the date of the "last" act or omission, which they contend was the date that Mr. Arnold and Mr. McNeal were last seen by Dr. Durrani, thus rendering their initial suits

---

[1] R.C. 2305.16 provides that if a person entitled to bring an action under R.C. 2305.113 "is, at the time the cause of action accrues, within the age of minority * * * the person may bring it within the respective times limited by [R.C. 2305.113], after the disability is removed."; *See Crissinger v. Christ Hosp.*, 2017-Ohio-9256, 106 N.E.3d 798, ¶ 13 (1st Dist.) (noting that the four-year repose period did not begin to run until the plaintiff's 18th birthday because R.C. 2305.16 applied).

timely. In this respect, they also feature a quote from *Wilson* where we included language about how the "last culpable act" can trigger the statute. *Wilson* at ¶ 16.

{¶14} But plaintiffs' arguments take these cases out of context and cannot be squared with the plain language of R.C. 2305.113(C)(1), which specifies that no action on a medical claim "shall be commenced more than four years after the occurrence of the act or omission constituting the alleged basis of the medical * * * claim." In *Wilson*, we quoted that very language right after the "last culpable act" comment, and certainly we did not intend to broaden the statutory language. Nor does *Bugh* help these plaintiffs because it dealt with a medical claim premised on the failure to diagnose, in which the court sought to ascertain the last date the patient was eligible for corrective treatment to determine whether the statute of repose barred the medical claims. *Bugh* at ¶ 31. The court necessarily needed to determine the latest date on which proper diagnosis could have helped the patient, given that an omission formed the basis of the patient's medical claim. *Id.* at ¶ 32.

{¶15} These cases fail to provide Messrs. Arnold and McNeal a ticket for reversal because their claims revolve around affirmative actions—the alleged negligently-performed surgeries by Dr. Durrani. To be sure, both individuals saw Dr. Durrani subsequent to their surgeries, but these subsequent visits do not form the basis for their medical claims. A tour of their complaints reveals instead that the underlying claims rest on the contention that Dr. Durrani improperly and unnecessarily performed surgery on them. Thus, the "act" from which the statute of repose necessarily runs here is from the date of the surgeries because they constitute the alleged basis of the medical claims.

{¶16} Further attempting to avoid application of the statute of repose, both plaintiffs assert that Dr. Durrani's absconding to Pakistan should toll the repose

9

period under R.C. 2305.15(A). The force of this contention, however, is blunted by that fact that this event occurred only *after* the statute of repose expired. These plaintiffs posit that Dr. Durrani fled to Pakistan in December 2013, yet the repose period on Mr. Arnold's claims ran in 2012, and the latest that Mr. McNeal could have brought a claim was April 2013. Therefore, even if we agreed with them both on the premise of their legal argument (on which we take no position today), it would not rescue their complaints.

{¶17} As their next entreaty to avoid the statute of repose, Mr. Arnold and Mr. McNeal insist that their fraud and negligent credentialing claims are in fact nonmedical claims (and thus beyond the scope of the statute of repose), but these arguments cannot be squared with our recent precedent. In *Freeman,* 1st Dist. Hamilton No. C-180197, 2019-Ohio-3643, we explained that fraud claims relating to treatment fall under the broad umbrella of "medical claim" as defined in R.C. 2305.113. *Id.* at ¶ 24. R.C. 2305.113(E)(3) defines medical claims as "[c]laims that arise out of the medical diagnosis, care, or treatment of any person" and "[d]erivative claims for relief that arise from the medical diagnosis, care, or treatment of a person[.]" We traced the history of this provision and applied it against the backdrop of our prior cases addressing similar issues.

{¶18} Messrs. Arnold and McNeal attempt to distinguish their fraud claims from medical claims by positing that the decision to misstate the facts was not "medical in nature." But such an exception would swallow the rule, as we recognized in *Freeman.* Just as in *Freeman*, these plaintiffs' "fraud allegations echo the statutory definition of 'medical claim' under R.C. 2305.113(E)(3)." *See Freeman* at ¶ 18. Here, both plaintiffs' complaints framed the alleged fraud claims in terms of their treatment: "Dr. Durrani made material, false representations to Plaintiffs * * *

10

*related to Plaintiff's treatment* including: stating the surgeries were necessary, that [he] 'could fix' Plaintiff[.]" (Emphasis added.) Despite their current portrayal of the fraud claims as independent, nonmedical claims, we ultimately find that "[c]lever pleading cannot transform what are in essence medical claims into claims for fraud." *Freeman* at ¶ 24, quoting *Hensley v. Durrani*, 1st Dist. Hamilton No. C-130005, 2013-Ohio-4711, ¶ 19. Thus, the fraud claims raised here constitute "medical claims" for purposes of the statute of repose.

{¶19} Similarly, we have previously held that negligent credentialing claims constitute "medical claims" under the statute of repose. *See Crissinger v. Christ Hosp.,* 2017-Ohio-9256, 106 N.E.3d 798, ¶ 17 (1st Dist.) ("Our previous holding in *Young* established that the claims for negligence, negligent credentialing, and fraud were 'medical claims' within the statute of repose[.]"); *Young v. Durrani,* 2016-Ohio-5526, 61 N.E.3d 34, ¶ 21 (1st Dist.) ("Similarly the Youngs' claim for negligent credentialing and retention is a medical claim because it results from the 'hiring, training, supervision, retention, or termination of caregivers providing medical diagnosis, care, or treatment.' "), citing R.C. 2305.113(E)(3)(b)(ii)). We see no reason to depart from this line of cases and accordingly find these plaintiffs' negligent credentialing claims likewise present "medical claims" barred here by the statute of repose.

B.

{¶20} Turning to Mr. Arnold's and Mr. McNeal's second assignments of error, they both challenge the trial court's denial (on futility grounds) of their motions for leave to amend their complaints. We generally review the denial of a motion to amend a complaint for an abuse of discretion. *Danopulos v. Am. Trading II, L.L.C.,* 2016-Ohio-5014, 69 N.E.3d 157, ¶ 23 (1st Dist.). Because we already

determined that the statute of repose bars their claims, this resolves most of the issues raised in their second assignments of error that rest on the premise of a contrary ruling. We therefore overrule these aspects of their second assignments of error and focus our analysis on their state RICO claims under R.C. 2923.32 (which implicates a question we left open in *Freeman. See Freeman,* 1st Dist. Hamilton No. C-180197, 2019-Ohio-3643, at ¶ 27, fn. 1).

{¶21} R.C. 2923.32(A)(1) prohibits persons from directly or indirectly, conducting or participating in the affairs of an enterprise through a pattern of corrupt activity. Pleading a civil claim for a state RICO action requires the plaintiff show:

> (1) that conduct of the defendant involves the commission of two or more specifically prohibited state or federal criminal offenses; (2) that the prohibited criminal conduct of the defendant constitutes a pattern; and (3) that the defendant has participated in the affairs of an enterprise or has acquired and maintained an interest in or control of an enterprise.

*Wilk v. Discover Bank*, 11th Dist. Lake No. 2019-L-006, 2019-Ohio-3842, ¶ 57, quoting *Morrow v. Reminger & Reminger Co., L.P.A.*, 183 Ohio App.3d 40, 2009-Ohio-2665, 915 N.E.2d 696, ¶ 27 (10th Dist.). After a review of the proposed amended complaint, however, the allegations primarily consist of conclusory statements that the defendant hospitals engaged in a pattern of corrupt activity by allowing Dr. Durrani to continue the surgeries, which is insufficient for purposes of R.C. 2923.32. *See Wilk* at ¶ 59 ("The complaint alleges neither a pattern of corrupt activity nor the commission of two or more prohibited state or federal criminal offenses, and none is discernible."); *Morrow* at ¶ 34 (finding no pattern of corrupt

activity where the allegations "demonstrate[d], at best, a single scheme of narrow scope" and "a single type of predicate act, i.e., perjury.").

{¶22} The allegations underlying the claims under R.C. 2923.32 merely present "medical claims" in different attire. The proposed amended complaints indicate that the defendant hospitals allowed "Dr. Durrani to perform the unnecessary surgery on the Plaintiffs" and that the hospitals "profited from Dr. Durrani's unnecessary surgeries." Despite cloaking these claims under R.C. 2923.32, the language of the complaint indicates that the genesis of the RICO claims remains the surgeries, placing them firmly within the ambit of "medical claims" for purposes of the statute of repose. *See Hensley,* 1st Dist. Hamilton No. C-130005, 2013-Ohio-4711, at ¶ 19 (noting that "clever pleadings" do not transform medical claims into nonmedical claims); *Freeman*, 1st Dist. Hamilton No. C-180197, 2019-Ohio-3643, at ¶ 24 (patient's fraud claims still medical claims); *Aaron v. Durrani*, S.D. Ohio Nos. 1:13-cv-202 and 1:13-cv-214, 2014 WL 996471, *5 (Mar. 13, 2014) ("Plaintiffs are simply attempting to recast their medical malpractice claims as RICO claims.").

{¶23} We therefore conclude that amendment under these circumstances would have been futile, and the trial court did not err in denying the motions to amend the complaints. *See Freeman* at ¶ 27 (amendment futile where underlying claims were "medical claims" subject to four-year statute of repose).

III.

{¶24} As to Mr. Scott's case, the trial court ultimately granted judgment on the pleadings under Civ.R. 12(C) in favor of Dr. Durrani, CAST, WCH and UC Health, which he now challenges. Initially, a trial court may grant judgment on the pleadings pursuant to Civ.R. 12(C) "where no material issue of fact exists and the moving party is entitled to judgment as a matter of law." *Amadasu v. O'Neal*, 176 Ohio App.3d

13

217, 2008-Ohio-1730, 891 N.E.2d 802, ¶ 5 (1st Dist.). We review the trial court's grant of judgment on the pleadings de novo. *Id.* Like Messrs. Arnold and McNeal, Mr. Scott's first assignment of error also asserts that R.C. 2305.19(A) applies to save his refiled complaint after the four-year repose period ran. Unlike in our analysis above, however, R.C. 2305.19(A) is available and saves Mr. Scott's timely-commenced claims. The difference in outcomes hinges on the filing date for the first complaints in each of the cases.

{¶25} Mr. Scott underwent surgeries in 2006, 2008, 2010, and 2011, and filed his first complaint in Butler County in 2013. He subsequently voluntarily dismissed that suit and refiled within a year in Hamilton County, but outside of the medical malpractice repose period in R.C. 2305.113(C). Applying *Wilson*, despite the fact that the second refiled complaint fell outside the statute of repose period, R.C. 2305.19(A) operates to save the claims still within the four-year repose period at the time of the initial filing in 2013, namely the four surgeries that occurred in 2010 and 2011.[2] *See Wilson,* 1st Dist. Hamilton Nos. C-180196 and C-180194, 2019-Ohio-3880, at ¶ 31.

{¶26} Thus, so long as the two suits were "substantially similar" the savings statute may be properly invoked. *Children's Hosp. v. Ohio Dept. of Pub. Welfare*, 69 Ohio St.2d 523, 525, 433 N.E.2d 187 (1982) ("The savings statute applies when the original suit and the new action are substantially the same."). And here the parties in the original and refiled action are identical, the complaints assert similar causes of action based on the same surgeries, and both suits seek monetary damages. *Compare Wilson* at ¶ 32 (appeals substantially similar when involving the "same

---

[2] From our review of the complaint, those surgeries represent the focal point of the medical malpractice (and related) claims. The complaint does not present substantive claims based on the 2006 and 2008 surgeries, and thus we need not evaluate whether Mr. Scott might have a viable theory for how claims based on those older surgeries would be timely.

defendants for almost identical causes of action[.]") *with Children's Hosp.* at 525 (claims not substantially similar when the parties in the new action were different parties than the ones in the original suit and the relief sought was different); *Antoon v. Cleveland Clinic Found.*, 148 Ohio St.3d 483, 2016-Ohio-7432, 71 N.E.3d 974, ¶ 31 (claims were not "substantially the same" when the second complaint included over a dozen additional parties and was pleaded solely as a qui tam action and did not expressly assert malpractice claims). Furthermore, none of the remaining defendants contest the similarity of the complaints on appeal. We thus have no hesitation in finding that the original and refiled actions are substantially similar for purposes of invoking the savings statute.

{¶27} The defendants here appreciate that *Wilson* is fatal to their statute of repose argument, and request that we overrule it. But we see no basis that would justify overruling an opinion that we handed down just months ago. A simple plea of "you got it wrong" falls well short of the demands for jettisoning recent precedent. *See Bouher v. Aramark Servs., Inc.*, 181 Ohio App.3d 599, 2009-Ohio-1597, 910 N.E.2d 40, ¶ 24 (1st Dist.) (elaborating on the specific circumstances which justify overruling prior precedent). Indeed, in several of these Durrani-related cases, when the plaintiffs have complained about one of our rulings and requested a revisiting of it, the defendants have assured us of the impropriety of reconsidering rulings of such recent vintage. We accordingly sustain Mr. Scott's first assignment of error based on *Wilson.*

{¶28} Mr. Scott's second and third assignments of error challenge the trial court's decision to allow WCH to amend its answer to include the statute of repose defense and the trial court's application of R.C. 2305.113 despite Dr. Durrani's loss of his medical license. Because we find his first assignment of error to be meritorious

and conclude that the statute of repose does not bar his claims, these assignments of error are moot. *See* App.R. 12(A)(1)(c).

IV.

{¶29}  In light of the foregoing analysis, in the appeal numbered C-180566 we overrule both of Mr. Arnold's assignments of error and affirm the judgment of the trial court.  In the appeals numbered C-180554 and C-180634, we overrule Mr. McNeal's two assignments of error and affirm the judgment of the trial court. Finally, as to Mr. Scott's appeal numbered C-180641 we sustain his first assignment of error, reverse the judgment of the trial court and remand the cause to the trial court for further proceedings consistent with this opinion.  We do not address his second and third assignments of error because they are mooted by our disposition of his first assignment of error.

Judgment accordingly.

**MYERS, J.**, concurs.
**MOCK, P.J.**, concurs separately.

**MOCK, P.J.,** concurring separetely.

{¶30}  While I agree that the savings statute applies to preserve the Scott claims while not doing so for the Arnold or McNeal claims, I write separately because I believe the reasoning for such a result is different than what was announced in *Wilson v. Durrani*, 1st Dist. Hamilton Nos. C-180196 and C-180194, 2019-Ohio-3880, and *Atwood v. UC Health*, S.D.Ohio No. 1:16cv593, 2018 WL 3956766 (August 17, 2018).

{¶31}  Both *Wilson* and *Atwood* rely on policy considerations to determine the interplay between the statute of repose for medical claims and the savings statute.  But I believe that the language of the repose statute itself dictates the result.

If a statute is ambiguous, a court must then interpret the statute to determine the General Assembly's intent; but if it is not ambiguous, then a court need not interpret it but must simply apply it. *Wilson v. Lawrence*, 150 Ohio St.3d 368, 2017-Ohio-1410, 81 N.E.3d 1242.

{**¶32**}   R.C. 2305.113(C) states that two separate provisions can apply in order for the statute of repose to bar a claim.  First, the statute provides that "**no action** upon a [medical claim] **shall be commenced more than four years after** the occurrence of the [act constituting the basis of the claim.]"  (Emphasis added.)  R.C. 2305.113(C)(1).  The legislature then went on state that "If **an action** upon a [medical claim] **is not commenced within four years** after the occurrence of the [act constituting the basis of the claim], **then, any action** upon that claim is barred."  (Emphasis added.) R.C. 2305.113(C)(2).

{**¶33**}   The first provision is simple enough to understand, and that provision applies to all three sets of claims here.  In all three sets of claims, the refiled actions were filed outside the four-year period.  But, under the second provision, we see a distinction.  The second provision sets forth that if an action is not commenced within four years, then any action is barred.  As to the Arnold and McNeal claims, no action had been commenced within the four-year period.  The Arnold claims were initially filed in 2013 in reference to a 2008 surgery.  The McNeal claims were initiated in 2014 in reference to, at the latest, a 2009 surgery.  Therefore, according to R.C. 2305.113(C)(2), any actions based upon on those claims were barred.

{**¶34**}   On the other hand, the Scott claims *were* commenced within the four-year period.  Therefore, the statute does not apply to their claims.

{**¶35**}   R.C. 2305.113(C)(1) and (2) are drafted to address different concerns.  2305.113(C)(1) addresses the situation in which a claim is not filed within the four-

17

year period. The language in 2305.113(C)(2), however, is conditional. *If* an action is not commenced within four years, *then* any action is barred. These provisions are separate, and we must assume that they operate differently. As the Ohio Supreme Court stated:

> A basic rule of statutory construction requires that "words in statutes should not be construed to be redundant, nor should any words be ignored." *E. Ohio Gas Co. v. Pub. Util. Comm.*[, 39 Ohio St.3d 295, 299, 530 N.E.2d 875 (1988)]. Statutory language "must be construed as a whole and given such interpretation as will give effect to every word and clause in it. No part should be treated as superfluous unless that is manifestly required, and the court should avoid that construction which renders a provision meaningless or inoperative." [*State ex rel. Myers v. Bd. of Education of Rural School Dist. of Spencer Twp. Lucas Cty.*, 95 Ohio St. 367, 372-373, 116 N.E. 516, 517 (1917).]

*D.A.B.E., Inc. v. Toledo-Lucas Cty. Bd. of Health*, 96 Ohio St.3d 250, 2002-Ohio-4172, 773 N.E.2d 536, ¶ 26.

{¶36} I believe that the only reading of R.C. 2305.113(C)(2) that does not make it redundant when compared to R.C. 2305.113(C)(1) is one in which an subsequent action is not barred if an action based on the same claims had been filed within the four-year period. The legislature chose the language "an action" and then "any action" in R.C. 2305.113(C)(2) with a purpose. If the phrase "an action" at the beginning of the provision did not refer to a distinct action from the "any action" referenced at the end, then the (C)(2) provision would cover the same situations as (C)(1).

18

**{¶37}** In this case, the Scott claims were filed within four years of the occurrence constituting the alleged basis of the claim. For that reason, the statute of repose in R.C. 2305.113(C) does not apply to the claim. And since the claims were refiled within one year of their dismissal pursuant to Civ.R. 41(A), R.C. 2305.19(A) allows that action to relate back to the date of the initial filing for purposes of calculating the statute of limitations.

Please note:

The court has recorded its own entry on this date.