JOURNAL ENTRY AND OPINION
{¶ 1} Michele Flanagan appeals the trial court's dismissal of her complaint against a former employer and its principals on claims of civil RICO violations. We affirm.
 {¶ 2} The record reveals that sometime in 2000, Flanagan, a licensed professional clinical counselor, entered into a contract with Access Behavioral Center ("ABC") to provide mental health and counseling services to ABC's patients. In exchange for providing her services, Flanagan would receive sixty percent of the total bill received either from the patient's insurance provider or the individual patient. ABC would receive the remaining forty percent.
 {¶ 3} Because of the nature of the health care industry, a three- to six-month payment lag between the date of service and the date of payment was common. When payment was finally received, however, ABC would then issue checks to both Flanagan and itself for services rendered. This arrangement continued for approximately three years that Flanagan remained with ABC.
 {¶ 4} On March 25, 2004, ABC sent Flanagan a letter advising that the company was closing effective March 31, 2004. Flanagan continued to work with ABC through its closing, but alleges that she never received any additional paychecks for services rendered.
 {¶ 5} In April 2004, Flanagan filed suit against ABC as a corporation, the individual corporate shareholders of ABC which included: Drs. Diane Eden, Shari Ridge, and Benita Chernyk, Dr. Eden's successor corporation, Diane Eden, M.D. Associates ("Associates"), and Dr. Chernyk's successor corporation Affiliates in Behavioral Health, LLC, ("Affiliates"), and finally, the company's former bookkeeper, Linda Baldry. (We refer to these seven parties collectively as "appellees.")
 {¶ 6} In her complaint, Flanagan alleged that "on several separate occasions," when independent contractor therapists terminated their affiliation with appellees, appellees refused to pay the ex-therapists the patient payments and insurance company reimbursements that were received after the relationship had terminated. Instead, Flanagan alleges that Dr. Eden began to provide mental health and related services in Willoughby Hills through an entity named "Diane Eden, M.D. and Associates," which Eden had incorporated in February 2004. Dr. Chernyk also began to provide similar services in Independence and incorporated "Affiliates in Behavioral Health, L.L.C." in January 2004. Flanagan claims that appellees conducted what she has termed an "incomplete payment scheme" or a "short change pay check scheme." Flanagan described these schemes in her complaint by stating:
"From 2000 until the present, Eden, Ridge, Chernyk and/or Baldrey acted individually and/or collectively, pursuant to a scheme or artifice to steal or otherwise embezzle patient payments and insurance company reimbursements properly due and payable to Flanagan from patients (their insurance companies) that received mental health therapy and related counseling services from Flanagan." (Complaint at 7).
 {¶ 7} Based upon these actions, Flanagan asserts damages of over $40,000 on charges of wire fraud, mail fraud, theft, and embezzlement.
 {¶ 8} Drs. Eden, Ridge, and Chernyk moved to dismiss the complaint for failure to state a claim for which relief could be granted. The court granted the motion in August 2004, solely as to the first count alleging RICO violations. Flanagan then voluntarily dismissed the remaining two counts alleging breach of contract and demanding an equitable accounting of all funds due and payable. She now appeals the court's dismissal of count one in a single assignment of error which states:
"The trial court committed prejudicial error when it dismissed the plaintiff-appellant's complaint."
 {¶ 9} Our standard of review on a Civ.R. 12(B)(6) motion to dismiss is de novo. Hunt v. Marksman Products (1995), 101 Ohio App.3d 760, 762. A motion to dismiss for failure to state a claim upon which relief can be granted is procedural and tests the sufficiency of the complaint, Stateex rel. Hanson v. Guernsey Cty. Bd. of Commrs. (1992), 65 Ohio St.3d 545,548, 1992-Ohio-73, citing Assn. For the Defense of the Washington LocalSchool Dist. V. Kiger (1989), 42 Ohio St.3d 116, 117. Such a motion should be granted "only where the allegations in the complaint show the court to a certainty that the plaintiff can prove no set of facts upon which he might recover." Slife v. Kundtz Properties (1974),40 Ohio App.2d 179, 186.
 {¶ 10} As count one of the complaint related to civil RICO claims, Flanagan was required to comply with Ohio's civil RICO statute, R.C.2923.32(A)(1). Under this statute it provides, "No person employed by, or associated with any enterprise shall conduct or participate in, directly or indirectly, the affairs of the enterprise through a pattern of corrupt activity." In order to prove liability under this statute, a plaintiff must establish: (1) that conduct of the defendant involves the commission of two or more specifically prohibited state or federal criminal offenses; (2) that the prohibited criminal conduct of the defendant constitutes a pattern; and (3) that the defendant has participated in the affairs of an enterprise or has acquired and maintained an interest in or control of an enterprise. Kondrat v. Morris (1997), 118 Ohio App.3d 198,209; Universal Coach, Inc. v. NYC Transit Auth. (1993),90 Ohio App.3d 284.
 {¶ 11} The failure of a plaintiff to plead any of the elements necessary to establish a RICO violation results in a defective complaint which cannot withstand a motion to dismiss based upon a failure to state a claim upon which relief can be granted. Universal Coach, Inc.,90 Ohio App.3d at 291. See, also, Collins v. Nat'l City Bank (Dec. 19, 2003), Montgomery App. No. 19884, 2003-Ohio-6893.
 {¶ 12} In order to state a claim upon which relief can be granted and withstand a motion to dismiss, Flanagan was required to plead specifically that: (1) Appellees were involved in some "corrupt activity" as defined by R.C. 2923.31(I); (2) Appellees were involved in a pattern of corrupt activity which consisted of two or more incidents of corrupt activity as prohibited by R.C. 2923.31(I); and (3) that an enterprise existed separate and apart from ABC through which ABC, its individual shareholders and its successors acted. Collins, supra at ¶ 42. To satisfy the Kandrat test, Flanagan argues that appellees were engaged in, what she classifies as, either an "incomplete payment scheme" or a "short change paycheck scheme." Through these schemes, Eden, Ridge, Chernyk and/or Baldrey would mail or electronically transmit insurance company claim forms to insurance companies and/or directly to patients to obtain reimbursements. (Complaint at 8). To meet the mandate of a pattern of corrupt activity in order to survive a motion to dismiss, Flanagan alleged that:
"Eden, Ridge, Chernyk and/or Baldrey engaged in a pattern of corrupt and/or racketeering activity . . . more than two (2) times during the past ten years; the predicate acts of mail fraud, wire fraud, theft and embezzlement were related and continuous; and the acts of the separate incomplete payment scheme had the same or similar purposes, results, participants, victims (such as Flanagan and other independent contractor therapists) and methods of commission, further evidence of which will be adduced at the time of trial." (Complaint at 9).
 {¶ 13} While the test outlined in Kandrat, supra, mandates the pleading of an "enterprise," it is clear that Flanagan has failed to specifically plead that an enterprise existed separate and apart from ABC through which ABC, its individual shareholders, and its successors acted.
 {¶ 14} Flanagan broadly claims that ABC is Diane Eden, M.D. and Associates, and Affiliates were "enterprises." (Complaint at 6). She asserts that the doctors "used money and income derived from their pattern of illegal racketeering activities in the establishment of one or more enterprises * * *." (Complaint at 10). She further alleges that through their pattern of racketeering activities, the doctors acquired and maintained interests in one or more enterprises. (Complaint at 10). Despite these vague assertions, an enterprise "is not a `pattern of racketeering activity,' but must be `an entity separate and apart from the pattern of activity in which it engages.'" Old Time Enterprises,Inc. v. Internatl. Coffee Corp. (C.A.5, 1989), 862 F.2d 1213, 1217, citing Montesano v. Seafirst Commercial Corp. (C.A.5, 1987), 818 F.2d 423,424. Although a corporation may be a member of an enterprise, the enterprise may not simply be composed of a corporation and its officers or employees. See, Parker Parsley Petroleum v. Dresser Industries
(C.A.5, 1992), 972 F.2d 580, 583; Bd. of Cty. Commrs. v. Liberty Group
(C.A.10, 1992), 965 F.2d 879, 885; Old Time Enterprises v. Internatl.Coffee Corp., 862 F.2d at 1217; Yellow Bus Lines, Inc. v. Local Union639 (C.A.D.C. 1988), 839 F.2d 782, 791; Atkinson v. Anadarko Bank Trust Co. (C.A.5, 1987), 808 F.2d 438, 441. As the court in Yellow Bus
found that, "[i]n short, an organization cannot join with its own members to do that which it normally does and thereby form an enterprise separate and apart from itself." Yellow, 839 F.2d at 791.
 {¶ 15} Flanagan vaguely alleges that "[f]rom 2000" appellees engaged in a pattern of corrupt activity. She does not outline when the alleged enterprise began, or even claim who was involved in such an enterprise other than to vaguely claim that, "Eden, Ridge, Chernyk and/or Baldrey" were involved. (Complaint at 9) (Emphasis added.) Assuming that the "[f]rom 2000" statement refers to January 2000, ABC would have operated its alleged schemes solely through ABC itself for approximately four years. If this was in fact the case, these actions fail to meet the requirement of a separate enterprise that existed to carry out the schemes. There is no indication that any of the parties were performing activities which by their very nature formed an enterprise that was separate and apart from its normal functions. ABC, and therefore its employees, submitted insurance claim forms and sent individual bills to patients as a matter of course.
 {¶ 16} Even from the added allegations complained of in her complaint, additional "enterprises" were not formed until, at the earliest, January 2004, or a maximum of two months before ABC closed. If this "enterprise" was truly placed in existence for purposes of carrying out the corrupt activity, the longest period it could have engaged in such activity was two months. Even assuming a tenuous creation of an enterprise for a two-month period, and although alleging that the appellees began new entities, i.e., Associates and Affiliates, to use them as part of the "Incomplete Payment Scheme," she states, "It is unclear at this time whether or not the profits derived from the incomplete payment scheme were used to fund the start up costs of M.D. Associates and/or Affiliates." (Complaint at 9).
 {¶ 17} We find that the allegations contained in the complaint are insufficient to survive a motion to dismiss.
 {¶ 18} Flanagan's sole assignment of error lacks merit.
 {¶ 19} The judgment of the trial court is affirmed.
It is ordered that appellees shall recover of appellant costs herein taxed.
The court finds that there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Cuyahoga County Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Celebrezze Jr., P.J., And Sweeney, J., concur.