[Cite as *Jonas v. Durrani*, 2020-Ohio-3787.]

# IN THE COURT OF APPEALS
## FIRST APPELLATE DISTRICT OF OHIO
## HAMILTON COUNTY, OHIO


| | | |
|---|---|---|
| SARA JONAS, | : | APPEAL NO. C-180457 |
| | | TRIAL NO. A-1504134 |
| and | : | |
| | : | |
| BRADLEY JONAS, | : | |
| | : | |
| Plaintiffs-Appellants, | : | |
| | : | |
| vs. | : | |
| | : | |
| ABUBAKAR ATIQ DURRANI, M.D., | : | |
| | : | |
| CENTER FOR ADVANCED SPINE TECHNOLOGIES, INC, | : | |
| | : | |
| and | : | |
| | : | |
| CHRIST HOSPITAL, | : | |
| | : | |
| Defendants-Appellees, | : | |
| | : | |
| and | : | |
| | : | |
| CINCINNATI CHILDREN'S HOSPITAL MEDICAL CENTER, | : | |
| | | |
| Defendant. | : | |

| | | |
|---|---|---|
| ANDREW CARR, | : | APPEAL NO. C-180458 |
| | | TRIAL NO. A-1505422 |
| Plaintiff-Appellant, | : | |
| | | |
| vs. | : | *O P I N I O N.* |
| | | |
| ABUBAKAR ATIQ DURRANI, M.D., | : | |
| | | |
| CENTER FOR ADVANCED SPINE TECHNOLOGIES, INC, | : | |
| | | |
| and | : | |

CHRIST HOSPITAL,                                   :

    Defendants-Appellees,

  and                                             :

WEST CHESTER HOSPITAL, LLC,                        :

UC HEALTH,                                         :

  and                                             :

CINCINNATI            CHILDREN'S                   :
HOSPITAL MEDICAL CENTER,

    Defendants.                                :


Civil Appeals From: Hamilton County Court of Common Pleas

Judgments Appealed From Are: Affirmed in C-180457;   Affirmed in Part, Reversed in Part, and Cause Remanded in C-180458

Date of Judgment Entry on Appeal: July 22, 2020


*Robert A. Winter Jr.* and *The Deters Law Firm, P.S.C.*, and *Fred Johnson,* for Plaintiffs-Appellants Sara Jonas, Bradley Jonas, and Andrew Carr,

*Taft Stettinius & Hollister LLP*, *Russell S. Sayre, Aaron M. Herzig* and *Philip D. Williamson*, for Defendants-Appellees Abubakar Atiq Durrani, M.D., and Center for Advanced Spine Technologies,

*Dinsmore & Shohl LLP, Jennifer Orr Mitchell, Matthew S. Arend* and *R. Samuel Gilley,* for Defendant-Appellee Christ Hospital.

**BERGERON, Judge.**

{¶1} We once again confront issues swirling around the malpractice allegedly committed by Dr. Abubakar Atiq Durrani. In this latest chapter, we evaluate complaints filed by plaintiffs-appellants Sara Jonas, her husband Bradley Jonas, and Andrew Carr. Given the similarity of their claims, we consolidate their cases for opinion purposes. In line with recent authority from this court, we affirm the dismissal of Ms. Jonas's complaint, but reverse in part the dismissal of Mr. Carr's complaint.

I.

{¶2} Suffering from lower back pain, plaintiff-appellant Sara Jonas sought treatment with Dr. Durrani in the spring of 2008. Dr. Durrani ultimately recommended surgery to alleviate Ms. Jonas's pain, performing surgery on her in August 2008. Rather than solving her problems, however, after surgery Ms. Jonas experienced increased pain and muscle spasms. This led Ms. Jonas to seek treatment from another doctor who performed a repair surgery on her back. In the wake of these events and her continued pain, Ms. Jonas and her husband Bradley Jonas eventually brought suit in the Hamilton County Common Pleas Court against Dr. Durrani, the Center for Advanced Spine Technologies, Inc., ("CAST") and Christ Hospital in May 2014, but they subsequently voluntarily dismissed the claims pursuant to Civ.R. 41(A) in August 2014. Ms. Jonas then refiled her claims in August 2015, adding Cincinnati Children's Medical Hospital Center ("Children's") as a party, and asserting claims of negligence, fraud, lack of informed consent, battery, and negligent credentialing, among others.

{¶3} Unlike Ms. Jonas, who underwent only one surgery with Dr. Durrani, Dr. Durrani performed multiple surgeries on Andrew Carr. Beginning in 2004, Mr.

3

Carr sought care for a curvature of his spine, which ultimately led to a 2005 operation with Dr. Durrani at Children's. Another surgery in 2007 at Christ Hospital ensued, followed by yet a third surgery in 2010 at West Chester Hospital. After this series of surgeries failed to alleviate Mr. Carr's back issues, he eventually filed suit in Butler County in 2013, but then voluntarily dismissed that case under Civ.R. 41(A) in 2015. Subsequently refiling the case later that same year in Hamilton County, Mr. Carr raised claims against Dr. Durrani, CAST, Children's, Christ Hospital, West Chester Hospital, and UC Health, including claims of negligence, battery, fraud, lack of informed consent, and negligent credentialing, among others.

{¶4} Both Ms. Jonas's and Mr. Carr's refiled claims suffered the same fate at the trial court level, as Dr. Durrani, CAST, along with the relevant defendant hospitals moved to dismiss the pending claims against them based on Ohio's four-year medical malpractice statute of repose. Agreeing with the defendants, the trial court dismissed the claims, deeming them untimely as falling outside the four-year window allotted under the statute. The court also denied the plaintiffs' respective motions to amend their complaints, concluding the endeavors futile in light of the statute of repose barrier.

{¶5} Ms. Jonas (along with her husband) and Mr. Carr separately appealed the dismissals of their complaints and the denials of their motions to amend. After filing their appeals, however, Mr. Carr voluntarily dismissed with prejudice his pending claims against West Chester Hospital, UC Health, and Children's, and the Jonases dismissed with prejudice their pending claims against Children's. After the dust settled from those dismissals, it left only Dr. Durrani, CAST and Christ Hospital as parties relevant for these appeals.

4

{¶6} On appeal, Ms. Jonas and Mr. Carr each present two assignments of error, challenging the dismissal of their claims as barred by the medical malpractice statute of repose and the trial court's denial of their respective motions to amend their complaints.

II.

{¶7} We begin our analysis with Ms. Jonas's appeal and her first assignment of error. The trial court dismissed Ms. Jonas's complaint pursuant to Civ.R. 12(B)(6) for failure to state a claim upon which relief can be granted. We review a trial court's dismissal of a claim on Civ.R. 12(B)(6) grounds de novo. *Makrauer v. Hal Homes, Inc.*, 1st Dist. Hamilton No. C-190256, 2020-Ohio-945, ¶ 6. A complaint should only be dismissed for failure to state a claim where it appears, beyond a doubt, that the plaintiff can prove no set of facts that would entitle him or her to recovery. *Id.* In conducting this review, we must accept the complaint's factual allegations as true, drawing all reasonable inferences therefrom in favor of the nonmoving party. *Id.*

A.

{¶8} Under her first assignment of error, Ms. Jonas challenges the trial court's determination that Ohio's medical malpractice statute of repose, R.C. 2305.113(C), bars her claims. The statute of repose included within R.C. 2305.113 bars medical claims commenced more than four years "after the occurrence of the act or omission constituting the alleged basis of the medical * * * claim[.]" R.C. 2305.113(C)(1) and (2). A statute of repose therefore measures the time limit in which to bring a claim, not from when the claim accrues, but from the date of when the alleged wrongful conducted occurred. *See Makrauer* at ¶ 7; *McNeal v. Durrani*, 2019-Ohio-5351, 138 N.E.3d 1231, ¶ 14 (1st Dist.), *appeal accepted* 158 Ohio St.3d

5

1522, 2020-Ohio-3018, 145 N.E.3d 312 (noting that plain language of the statute measures four-year repose period from the occurrence of the act or omission constituting the alleged basis of the claim). Here, the trial court determined that the underlying "act" supporting her claims was the 2008 surgery that Dr. Durrani performed, thus barring the claims filed more than four years after this date. Attempting to rebut this determination on appeal, Ms. Jonas presents a litany of issues in an effort to circumvent the presumptive bar of the statute of repose. Yet many of these arguments cannot be squared with our recent precedent.

{¶9} To begin, Ms. Jonas seeks to characterize her fraud and negligent credentialing claims as nonmedical claims in order to escape the purview of the four-year repose period in R.C. 2305.113(C). We recently considered and rejected this same argument, recognizing that R.C. 2305.113(E) broadly defines "medical claims." *See Freeman v. Durrani*, 2019-Ohio-3643, 144 N.E.3d 1067, ¶ 21 (1st Dist.) (noting in the years since original enactment the General Assembly "vastly broadened" the definition of a "medical claim."). R.C. 2305.113(E), includes claims arising out of medical care, diagnosis, or treatment of any person including "[d]erivative claims for relief" arising out of the same. R.C. 2305.113(E)(3)(a). In other words, simply placing a "fraud" label on a claim cannot side-step the statute of repose. Undaunted, Ms. Jonas maintains that Dr. Durrani's misrepresentation of facts was not medical in nature and, therefore, outside the realm of R.C. 2305.113(C). But the complaint tells a different story, describing the fraud as consisting of "material, false representations * * * related to * * * treatment" and seizing on these misrepresentations as inducing her to undergo surgery. These are precisely the type of allegations that we previously recognized as falling within the statutory definition of "medical claims" under R.C. 2305.113(E), as they arise out of the care and treatment of the patient. *See McNeal*

6

at ¶ 18 (fraud claims were "medical in nature" where allegations were framed in terms of patients' treatment); *Freeman* at ¶ 24 (same).

{¶10} Ms. Jonas's negligent credentialing claim meets a similar fate here, as we have repeatedly held that such claims constitute "medical claims" for purpose of the statute of repose. *McNeal* at ¶ 19 ("[W]e have previously held that negligent credentialing claims constitute 'medical claims' under the statute of repose."); *Young v. Durrani,* 2016-Ohio-5526, 61 N.E.3d 34, ¶ 21 (1st Dist.) (noting that the plaintiff's claim for negligent credentialing was a medical claim as it resulted from the "hiring, training, supervision, retention, or termination of caregivers providing medical diagnosis, care, or treatment."); *Crissinger v. Christ Hosp.*, 2017-Ohio-9256, 106 N.E.3d 798, ¶ 17 (1st Dist.) (relying on *Young* in concluding that negligent credentialing claims are medical claims for purposes of the statute of repose). This conclusion comports with the definition of "medical claims," which includes claims arising out of the medical diagnosis, care, or treatment of any person when "[t]he claim results from the hiring, training, supervision, retention, or termination of caregivers providing medical diagnosis, care, or treatment." R.C. 2305.113(E)(3)(c)(ii).

{¶11} Recognizing that the definition of "medical claim" under R.C. 2305.113 likely spells the death knell for her claims, Ms. Jonas also urges us to adopt an equitable estoppel or fraud exception to the statute of repose. But we have consistently rejected such entreaties in the past, noting that the General Assembly specifically declined to add a fraud exception, and ultimately "we cannot substitute our judgment for the legislature's choice." *Freeman* at ¶ 24; *Crissinger* at ¶ 11 (same). Where the General Assembly could have included an equitable estoppel or

fraud exception (as some other states have done), but declined to do so, our job is not to supplant that authority, but rather to apply the statute as written.

{¶12} Next, Ms. Jonas turns to the Ohio savings statute, R.C. 2305.19, for relief. R.C. 2305.19(A) allows a party to refile a suit within one year after the date of dismissal for a case that failed "otherwise than upon the merits." Ms. Jonas asserts that because she timely refiled her second complaint within one year of the dismissal of the initial complaint, the refiling relates back to her original claim, therefore saving it. But for such a refiling to save a claim from application of the medical malpractice statute of repose, the original claim must have been timely filed within the four-year repose period under R.C. 2305.113(C). *Wilson v. Durrani,* 2019-Ohio-3880, 145 N.E.3d 1071, ¶ 31 (1st Dist.), *appeal accepted,* 157 Ohio St.3d 1562, 2020-Ohio-313, 138 N.E.3d 1152. Here though, the savings statute cannot come to the rescue because Ms. Jonas did not file her original complaint until May 2014, approximately six years after her surgery and two years beyond the statutory repose period. Ultimately, R.C. 2305.19(A) cannot revive an untimely original complaint barred by the statute of repose. *McNeal* at ¶ 11-12.

{¶13} Anticipating this problem, Ms. Jonas maintains that the trial court erred in applying the date of the surgery to calculate the running of the repose period, insisting instead that the date of the surgery was not the last act or omission of the defendants in an effort to (effectively) elongate the repose period. Recently faced with a similar argument in *McNeal v. Durrani*, we noted that the plaintiffs' claims there "revolve[d] around affirmative actions," the allegedly negligently performed surgeries. *Id.* at ¶ 15. Similarly, surveying Ms. Jonas's complaint, the underlying claims rest on the assertion that Dr. Durrani negligently performed the 2008 surgery. While Ms. Jonas's complaint makes mention of follow-up care and

post-surgery concealments, all of the harm flows from the underlying claim that the surgery was negligently performed. *See id.* at ¶ 15 ("Thus, the 'act' from which the statute of repose necessarily runs here is from the date of the surgeries because they constitute the alleged basis of the medical claims."). In sum, we see no allegations of a later separate act or omission that would enable us to stretch the starting line for the statute of repose period.

{¶14} As another potential avenue for relief, Ms. Jonas asserts that Dr. Durrani's flight in December 2013 tolled the running of the statute of repose under R.C. 2305.15(A), which tolls various limitations periods based on an individual's departure, concealment, or absconding. But here, even if the tolling provisions applied (the merits of which we take no position on), the 2008 date of surgery meant the repose period on Ms. Jonas's claims ran in 2012. Therefore, Dr. Durrani's flight occurred only *after* the repose period ran. *McNeal* at ¶ 16 (rejecting the same argument where Dr. Durrani fled after the repose period ran). Similarly, Ms. Jonas claims that when she refiled her action Dr. Durrani was no longer a "physician" within the meaning of the statute of repose and, therefore, her claims were no longer "medical claims" governed by the statute. But again, Dr. Durrani lost his medical license in 2014. Therefore, he was, in fact, a licensed doctor at the time he performed the surgery and at all times relevant for the repose period under R.C 2305.113(C). Even if Ms. Jonas's interpretation of this requirement were accurate (again, a question we need not reach today), the statute of repose is a "true statute of repose" and nothing suggests that a doctor's subsequent loss of license after the repose period runs revives a forfeited claim. *See Antoon v. Cleveland Clinic Found.*, 148 Ohio St.3d 483, 2016-Ohio-7432, 71 N.E.3d 974, ¶ 1.

B.

**{¶15}** Perhaps appreciating that most of the points above have been covered by our precedent, Ms. Jonas's final argument seeks to break new ground. She posits that Dr. Durrani's implantation of BMP-2 constitutes a "foreign object" pursuant to R.C. 2305.113(D)(2). Featuring language from four-decades-old caselaw and relying on her alleged lack of consent, Ms. Jonas asserts that Dr. Durrani's use of BMP-2 as part of her surgery constituted a "foreign object" undiscovered until 2013 and therefore saving her claim under R.C. 2305.113(D)(2)'s exception for undiscovered "foreign objects."

**{¶16}** The statute of repose provides "[i]f the alleged basis of a medical claim * * * is the occurrence of an act or omission that involves a foreign object that is left in the body of the person making the claim, the person may commence an action upon the claim not later than one year after the person discovered the foreign object * * * ." R.C. 2305.113(D)(2). Before enactment of R.C. 2305.113, courts recognized a variant of this exception as a common law means for tolling the then-existing statute of limitations for medical malpractice actions. *Melnyk v. Cleveland Clinic*, 32 Ohio St.2d 198, 200, 290 N.E.2d 916 (1972); *Vucsko v. Cleveland Urology Assoc., Inc.*, 8th Dist. Cuyahoga No. 107498, 2019-Ohio-1992, ¶ 11 (discussing common law foreign object exception). Justifying this carve-out, the Supreme Court, in *Melnyk*, explained that the limitations period warranted a "foreign object" exception because of the relationship between the "utterly helpless surgical patient and his surgeon" and because the surgeon "must be held to have assumed the responsibility for the removal of such articles, excepting only those which are intentionally left there for sound medical reasons." *Melnyk* at 200.

10

{¶17} But *Melnynk* does little to shed light on the meaning of the "foreign object" exception as it relates to the repose period, as at the time the statute did not include a statute of repose. *Saultz v. Funk,* 64 Ohio App.2d 29, 32, 410 N.E.2d 1275 (8th Dist.1979) (noting that repose period became effective in 1975). But even with the later addition of a repose component to the statute, it "[did] not mention a limited discovery rule * * * [r]ather the legislature limited the period during which the termination and tolling rules may extend the period for bringing a claim under [the limitations period]." *Id.* at 36. "By enacting [the repose period], the legislature limited the termination and tolling rules to the extent that they previously would have allowed a claim to be filed more than four years after the act or omission alleged to constitute malpractice." *Id.* at 37. In fact, not until passage of Am.Sub.S.B. 281 by the General Assembly in 2003, did the legislature include the statute of repose exception for foreign objects under R.C. 2305.113(D)(2). That act repealed parts of former R.C. 2305.11, which originally housed the medical malpractice limitation and repose periods, and enacted R.C. 2305.113, to regulate medical actions formerly governed by R.C. 2305.11. *See* Final Analysis, Am.Sub.S.B. No. 281, 124th General Assembly. Unfortunately, for our purposes, R.C. 2305.113 does not define "foreign object."

{¶18} A review of Ohio caselaw, however, confirms that a central concern of the foreign object exception is the failure to remove an item that the doctor should have removed from the body. *See Emery v. Dettling,* 9th Dist. Summit No. C.A. 8117, 1976 WL 188862, *1 (Aug. 4, 1976) (distinguishing intentional placement of an IUD in the patient from a foreign body left in the body during surgery); *Lipovecs v. Eisenstat*, 8th Dist. Cuyahoga No. 51512, 1987 WL 5304, *4 (Jan. 8, 1987) (noting that foreign object exception to the discovery rule did not apply to objects which the

physician intentionally placed in body as part of a surgery); *Vucsko* at ¶ 15 (noting that caselaw indicates that exception applies to objects not intentionally left in the body). This understanding of a "foreign object" also aligns with how other jurisdictions have interpreted "foreign object" exceptions to their own limitations or repose periods. *See Bright v. Sorensen,* 2020 UT 18, 463 P.3d 626, ¶ 63 (2020) ("foreign object" includes items used during surgery and meant to be removed or objects accidentally introduced into the body during surgery); *Walton v. Strong Mem. Hosp.,* 25 N.Y.3d 554, 35 N.E.3d 827 (2015) (contrasting "foreign objects" meant to be removed, serving only a medical function for the duration of the surgery from fixation devices meant to be left in the body); *Shah v. Lehman,* 953 S.W.2d 955, 957 (Mo.App.1997) (foreign objects are objects introduced and negligently permitted to remain in the body, not intentional introduction of an object meant to remain in the body).

{¶19} In rejecting Ms. Jonas's "foreign object" claim, the trial court relied on *Favor v. W.L. Gore Assoc., Inc.*, S.D.Ohio No. 2:13-cv-655, 2013 WL 4855196 (Sept. 11, 2013), which explains that "Ohio cases indicate that the exception carved out for a 'foreign object' left in a patient's body is intended to cover objects that should have been removed from the body, not to objects which are intentionally placed there as part of the medical procedure to which the patient consented." *Id.* at *3. While Ms. Jonas zeroes in on the finale of this quote to assert that she never consented to the use of BMP-2, her own complaint acknowledges that she consented to the surgery. To be sure, she challenges aspects of her consent given her claim that Dr. Durrani withheld certain information, but this attack on the efficacy of consent cannot be transformed into a "foreign object" exception. *See, e.g.*, *White v. Leimbach*, 131 Ohio St.3d 21, 2011-Ohio-6238, 959 N.E.2d 1033, ¶ 27 (element of lack of informed

12

consent claim includes that the physician failed to disclose the material risks and dangers potentially involved in the proposed therapy). In other words, we do not read that federal decision as engrafting an exception that would enable every patient who contested consent to avail themselves of the "foreign object" exception. Nor do we see how such a position can be squared with the language of the statue.

{¶20} Similarly, Ms. Jonas seizes on the "sound medical reason" aspect from *Melnyk*, to reason that because Dr. Durrani had no sound medical reason use BMP-2, this converts the BMP-2 into a "foreign object." Of course, the "sound medical reason" phrase is a relic from a case that predates the statute at hand by over a quarter-century. If the General Assembly had elected to include such language in the statute, we would be obliged to interpret it. But it did not. A plain, common sense, reading of the statute in the context of the caselaw demonstrates that "foreign objects" refers to objects that were meant to be removed upon the procedure's conclusion. A recent case from the Supreme Court of Utah interpreting an analogous statutory provision reached a similar conclusion. *Bright,* 2020 UT 18, 463 P.3d 626. There, the court emphasized the aspect of "discovery" of the foreign object (our statute uses "discovered") as presupposing "the placement of an object that was not the intended point of the surgery." *Id.* at ¶ 61. In other words, "the term *discovery* confirms that foreign objects are things left by mistake—in an *improper place*." (Emphasis sic.) *Id.* Synthesizing these points, the Utah court held that Utah's "foreign objects" exception encompasses "implements used during surgery but meant to be removed," as well as "objects accidentally introduced into the body during surgery." *Id.* at ¶ 63. But "foreign objects" does not "extend to medical devices or implants that are the very point of a medical procedure." *Id.*

13

{¶21} We find this interpretation sensible and persuasive. To adopt Ms. Jonas's position would be to expand the "foreign objects" exception and render every medical device case a potential candidate for a longer repose period. A plaintiff could, by challenging the medical reasoning of the doctor or the effectiveness of consent, circumvent the repose period. That would frustrate, rather than further, the intent of the General Assembly.

{¶22} This conclusion is bolstered by the opening phrase of the statute, which links the foreign object claim to "the alleged basis of a medical claim* * *." R.C. 2305.113(D)(2). Ms. Jonas's complaint tells a story about an intentional (albeit allegedly improper) decision to implant a medical device rather than anything sounding akin to a "foreign object" claim. As it relates to use of BMP-2, the complaint attacks Dr. Durrani's use of BMP-2 "in ways and for surgeries not approved by the FDA," and by not explaining his "potential use of [BMP-2] in [her] surgery when [Dr. Durrani] had a duty to disclose." This strikes us as a fairly prototypical medical negligence claim for improper off-label use of a medical device. Ms. Jonas never alleges that the BMP-2 was meant to be removed at the conclusion of her surgery or accidentally introduced into her, but instead she attacks it as the centerpiece of a faulty procedure orchestrated by Dr. Durrani. Therefore, the "alleged basis of the medical claim" is not a foreign object trespassing in the body but rather negligently-performed surgery with an improper device.

{¶23} Given that her complaint was filed more than four years after the act, i.e., the surgery, that formed the basis of the complaint, the medical malpractice statute of repose bars Ms. Jonas's claim. We accordingly overrule her first assignment of error.

14

C.

{¶24} Under her second assignment of error, Ms. Jonas alleges that the trial court erred when it denied her motion to amend her complaint on futility grounds. We review denial of a motion to amend a complaint for an abuse of discretion. *McNeal,* 2019-Ohio-5351, 138 N.E.3d 1231, at ¶ 20, citing *Danopulos v. Am. Trading II, L.L.C.*, 2016-Ohio-5014, 69 N.E.3d 157, ¶ 23 (1st Dist.). But a trial court does not err in denying a motion to amend where such amendment would be futile. *Freeman*, 2019-Ohio-3643, 144 N.E.3d 1067, at ¶ 27, citing *Hensley v. Durrani,* 1st Dist. Hamilton No. C-130005, 2013-Ohio-4711, ¶ 14.

{¶25} Here, Ms. Jonas contends that granting her leave to amend her claim would have allowed her "to bolster [the] factual claims against challenges raised within Appellee's motions" and that she "sustained needless undue prejudice by being unable to argue the factual allegations with the amended complaint." The trial court below concluded both that the fraud was not an independent medical claim, and it denied the motion to amend, noting that no fraud exception existed within the statute. And a survey of Ms. Jonas's additional factual allegations reveals that they relate back to the underlying surgery. For example, Ms. Jonas's additional allegations relating to the fraud provide merely that "Dr. Durrani lied * * * about the results of the post-op radiology which reflected the failed nature of the surgery" and that "Dr. Durrani lied about the outcome of the surgery * * * inform[ing] [Ms. Jonas] that the surgery was successful[.]" Based on our preceding analysis, her amendment would have been futile under these circumstances because the pleading of additional facts would still not have rendered her claim timely in light of the medical malpractice statute of repose. Therefore, the trial court did not err in denying her motion to amend, and we overrule her second assignment of error.

15

III.

{¶26} Turning to Mr. Carr's case, the trial court granted judgment on the pleadings pursuant to Civ.R. 12(C) as to the claims against Dr. Durrani and CAST, while dismissing the claims as to Christ Hospital on Civ.R. 12(B)(6) grounds. As we previously acknowledged, we review rulings on Civ.R. 12(B)(6) de novo. *Makrauer,* 1st Dist. Hamilton No. C-190256, 2020-Ohio-945, at ¶ 6. Similar to Civ.R. 12(B)(6), we review a trial court's decision on a motion for judgment on the pleadings pursuant to Civ.R. 12(C) de novo. *Euvard v. The Christ Hosp.*, 141 Ohio App.3d 572, 575, 752 N.E.2d 326 (1st Dist.2001). And though Mr. Carr underwent three surgeries with Dr. Durrani, only the 2010 surgery is at issue for purposes of this appeal. The prior surgeries would be time-barred based on the filing of the initial complaint (2013) in line with our analysis above with respect to Ms. Jonas's appeal, and Mr. Carr marshals no unique arguments as to how they might be salvaged. Therefore, we limit our focus to the 2010 surgery.

{¶27} In contrast to Ms. Jonas's complaint, Mr. Carr filed his initial complaint in Butler County in 2013, and within the four-year repose period for purposes of R.C. 2305.113(C) for the 2010 surgery. Mr. Carr then subsequently voluntary dismissed that complaint, refiling largely indistinguishable claims in Hamilton County within one year of the dismissal of the original complaint (but otherwise outside of the medical malpractice statute of repose). Despite refiling the claim outside the repose period, Mr. Carr's claim is nevertheless saved by R.C. 2305.19(A), as confirmed by our recent caselaw, so long as the two claims are "substantially the same." *Wilson,* 2019-Ohio-3880, 145 N.E.3d 1071, at ¶ 25; *Children's Hosp. v. Ohio Dept. of Pub. Welfare*, 69 Ohio St.2d 523, 525, 433 N.E.2d 187 (1982) ("The savings statute applies when the original suit and the new action

16

are substantially the same."). Upon examination, the two complaints satisfy such a standard, as they essentially raise the same claims against the same parties. *Children's Hosp.* at 525; *Wilson* at ¶ 32. Moreover, none of the parties quibble over this point. Therefore, the claims were substantially similar for purposes of invoking the savings statute. Mr. Carr's first assignment of error, insofar as it relates to the 2010 surgery, is accordingly sustained (but since Christ Hospital had no involvement in the 2010 surgery, we affirm the dismissal with respect to it).

{¶28} As to Mr. Carr's second assignment of error, he maintains that the trial court erred when it denied his motion to amend to add a civil state law RICO claim pursuant to the Ohio Corrupt Practices Act ("OCPA") under R.C. 2923.31 et seq. In denying the motion, the trial court depicted the claim as merely an attempt to recast his medical malpractice claims in order to circumvent the statute of repose, rendering any such amendment futile. In his appellate brief, Mr. Carr maintains that the trial court should have permitted this claim to proceed, insisting that it was non-medical in nature.

{¶29} But at a threshold level, we fail to see how Mr. Carr properly presented a civil claim under the OCPA. Perusal of his purported OCPA claim reveals little more than conclusory statements punctuated with an incantation of the elements of the statute. At a minimum, establishing a viable claim under the statute requires pleading, with particularity, that:

> (1) that conduct of the defendant involves the commission of two or more specifically prohibited state or federal criminal offenses; (2) that the prohibited criminal conduct of the defendant constitutes a pattern; and (3) that the defendant has participated in the affairs of an

17

enterprise or has acquired and maintained an interest in or control of

an enterprise.

*Flanagan v. Eden,* 8th Dist. Cuyahoga No. 85252, 2005-Ohio-3133, ¶ 10; *Morrow v. Reminger & Reminger Co., L.P.A.,* 183 Ohio App.3d 40, 2009-Ohio-2665, 915 N.E.2d 696, ¶ 27 (10th Dist.) (noting that failure to plead any of the elements of an OCPA claim with particularity results in a defective complaint); *Universal Coach, Inc. v. New York City Transit Auth., Inc.,* 90 Ohio App.3d 284, 291, 629 N.E.2d 28 (8th Dist.1993) ("The failure of the plaintiffs to plead these three elements with specificity mandated that the trial court dismiss the claimed RICO violation[.]"). But to satisfy these criteria, Mr. Carr simply offers statements such as "CAST is an enterprise." Nowhere in the amended complaint can we discern how he envisions structure, continuity, and separate existence from the corrupt practice to establish an "enterprise" within the meaning of R.C. 2923.31(C). *Morrow* at ¶ 38 (noting that these elements imply a degree of hierarchy which distinguish a RICO enterprise from a simple conspiracy). Stating a civil claim under the OCPA requires a requisite specificity that Mr. Carr's pleading is lacking, as mere conclusory statements will not suffice. *See Morrow* at ¶ 27 (noting pleading requirements for OCPA claim); *Herakovic v. Catholic Diocese of Cleveland*, 8th Dist. Cuyahoga No. 85467, 2005-Ohio-5985, ¶ 16 (same). Therefore, Mr. Carr did not plead facts sufficient to establish a claim as required for the OCPA. As the amendment was futile for these reasons, the trial court did not err in denying the motion to amend (although we reach that conclusion via a different path). We accordingly overrule Mr. Carr's second assignment of error.

IV.

{¶30} In conclusion, and based on our preceding analysis of the claims, in the appeal numbered C-180457, we overrule both of the Jonases' assignments of error and affirm the judgment of the trial court. In the appeal numbered C-180458, we sustain Mr. Carr's first assignment of error as it relates to his 2010 surgery and overrule his second assignment of error. The judgment of the trial court in the appeal numbered C-180458 is therefore reversed in part, affirmed in part, and the cause is remanded to the trial court for further proceedings consistent with this opinion.

Judgment accordingly.

**MYERS, J.,** concurs.
**ZAYAS, P.J.,** concurs in judgment only.

Please note:
The court has recorded its own entry this date.