NOT RECOMMENDED FOR PUBLICATION
File Name: 21a0557n.06

No. 20-4104

| | | |
|---|---|---|
| **UNITED STATES COURT OF APPEALS FOR THE SIXTH CIRCUIT** | | **FILED**<br>Dec 02, 2021<br>DEBORAH S. HUNT, Clerk |

| | | |
|---|---|---|
| HILARY LEVANDOFSKY, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE |
| v. | ) | SOUTHERN DISTRICT OF |
| | ) | OHIO |
| ABUBAKAR ATIQ DURRANI, *et al.*, | ) | |
| | ) | |
| Defendants-Appellees. | ) | AMENDED OPINION |
| | ) | |
| | ) | |

Before: ROGERS, STRANCH, and DONALD, Circuit Judges.

ROGERS, Circuit Judge. Hilary Levandofsky alleges that the former doctor Abubakar Durrani performed an unnecessary and harmful surgery on her spine in 2009. At issue on appeal are Levandofsky's claims of negligence, lack of informed consent, and fraud against Durrani and her claim against the Center for Advanced Spine Technologies for its alleged negligent hiring, supervision, and retention of Durrani. Because over twelve years have lapsed since the surgery at issue in her complaint, all of Levandofsky's claims are barred by the Ohio statute of repose, which provides that actions based on medical claims cannot be "commenced more than four years after the occurrence of the act or omission constituting the alleged basis of the medical . . . claim." Ohio Rev. Code § 2305.113(C)(1).

Levandofsky suffered from lower back and sciatic nerve pain in 2009, and her family doctor referred her to Durrani, an Ohio-based orthopedic surgeon. According to Levandofsky, Durrani told her that "her only option was surgery" and that she would recover in two weeks.

Durrani performed a spinal fusion on Levandofsky in July 2009. Levandofsky alleges that Durrani, without Levandofsky's consent, inserted a synthetic protein called BMP-2 into her spine in a dangerous manner, not approved by the U.S. Food and Drug Administration. Levandofsky "was in a great deal of pain" after the surgery. She attended several follow-up appointments with Durrani and last visited him in 2012. Levandofsky did not realize that Durrani inserted BMP-2 into her spine until she contacted a lawyer several years after the surgery. BMP-2 can only be removed immediately after the surgery inserting it, because over time the protein "integrate[s] into the patient's bone." Levandofsky still suffers from sciatic nerve pain, reduced flexibility, and pain in her right hip, lower back, and between her shoulder blades. She is now "very limited in the things she can do around the house" and can no longer teach. In addition to her claims against Durrani, Levandofsky alleges that the Center for Advanced Spine Technologies negligently hired and retained Durrani.

Durrani's allegedly negligent and fraudulent conduct has led to extensive litigation in state and federal district courts in Ohio. About 500 former patients of Durrani sued him for performing unnecessary and harmful surgeries. In August 2013, federal prosecutors indicted Durrani on numerous counts of health care fraud under 18 U.S.C. § 1347 and making false statements in health care matters under 18 U.S.C § 1035. In December 2013, Durrani fled to Pakistan and has not returned to the United States since. Levandofsky and other plaintiffs filed a complaint against Durrani in February 2014 in Ohio state court, and the plaintiffs voluntarily dismissed the complaint in December 2017. In November 2018, Levandofsky sued Durrani, Christ Hospital, and the Center for Advanced Spine Technologies in the United States District Court for the Southern District of Ohio. Levandofsky later dismissed her claims against Christ Hospital. Durrani and the Center for

Advanced Spine Technologies filed a motion for judgment on the pleadings, arguing that the Ohio statute of repose barred Levandofsky's claims.

A magistrate judge granted Durrani's motion in February 2020. The court concluded that the statute of repose barred Levandofsky's claims because over four years had passed since her 2009 surgery, which was the "last culpable act or omission" under the statute. The court noted that "the savings statute offers no relief unless the initial lawsuit was timely filed," so the court rejected Levandofsky's argument that the Ohio saving statute preserved her claim. According to the court, Durrani's flight to Pakistan in 2013 did not toll the statute of repose because it expired before Durrani left the country. The court concluded that Durrani's insertion of BMP-2 did not fall under the foreign object exception to the statute of repose. The court also concluded that Levandofsky's fraud and negligent credentialing claims were medical claims barred by the statute of repose, and the court declined to create a fraud exception to the statute. The district court adopted the magistrate judge's recommendations in their entirety and granted Durrani's motion for judgment on the pleadings.

On appeal, Levandofsky asserts that the statute of repose does not bar her claims for several reasons. She argues that the last "act or omission" that started the running of the statute was not her surgery, but instead was her last follow-up appointment with Durrani in 2012. Levandofsky claims that the statute of repose does not apply to her fraud and negligent hiring, supervision, and retention claims because they are not "medical claims." She also argues that the statute of repose does not bar her claims because Durrani's medical license was revoked, the statute was tolled after he fled the country, and the foreign object exception applies. Even assuming her claims would otherwise be barred, Levandofsky proposes a judicially-created fraud exception to the statute of

repose. Finally, she argues that the district court failed to conduct a de novo review of the magistrate judge's recommendations.

The last "act or omission" in this case was Levandofsky's surgery in 2009, so her claims are barred by Ohio's four-year statute of repose. The statute of repose provides that "[i]f an action upon a medical . . . claim is not commenced within four years after the occurrence of the act or omission constituting the alleged basis of the medical . . . claim, then, any action upon that claim is barred." Ohio Rev. Code § 2305.113(C)(2). The 2009 surgery was the source of both Levandofsky's injuries and Durrani's alleged fraud, so her window to file a complaint closed in 2013. Levandofsky argues that because Durrani continued to mislead her about the nature of the surgery during her follow-up appointments, the relevant "act or omission" was her last visit with Durrani in 2012. Levandofsky cites only out-of-state authority to support that argument, which has been rejected by several Ohio appellate opinions. In *McNeal v. Durrani*, the Ohio Court of Appeals found that because the plaintiffs' "underlying claims rest on the contention that Dr. Durrani improperly and unnecessarily performed surgery on them," the "'act' from which the statute of repose necessarily runs here is from the date of the surgeries [that] constitute the alleged basis of the medical claims," not the date of the plaintiffs' final visit. 138 N.E.3d 1231, 1236 (Ohio Ct. App. 2019), *rev'd on other grounds*, 165 N.E.3d 1268 (Ohio 2020); *see also Deck v. Durrani*, No. C-180685, 2020 WL 4200162, at *2 (Ohio Ct. App. July 22, 2020), *rev'd on other grounds*, 166 N.E.3d 1242 (Ohio 2020); *Schuster v. Durrani*, No. C-180687, 2020 WL 4208434, at *2 (Ohio Ct. App. July 22, 2020), *rev'd on other grounds*, 167 N.E.3d 959 (Ohio 2020); *see also Mahlenkamp v. Durrani*, No. 1:18-cv-817, 2021 WL 2012939, at *2 (S.D. Ohio May 19, 2021).

The foreign object exception to the statute of repose does not apply because BMP-2 is not the type of object covered by the statute, which typically covers objects accidentally left in a patient's body. The statute of repose provides that if a claim involves a "foreign object that is left in the body of the person making the claim, the person may commence an action upon the claim not later than one year after the person discovered the foreign object or not later than one year after the person, with reasonable care and diligence, should have discovered the foreign object." Ohio Rev. Code § 2305.113(D)(2). Ohio appellate court decisions have repeatedly determined that a "central concern of the foreign object exception is the failure to remove an item that the doctor should have removed from the body." *Jonas v. Durrani*, 156 N.E.3d 365, 371-72 (Ohio Ct. App. 2020), *rev'd on other grounds*, 168 N.E.3d 1188 (Ohio 2020); *see also Vucsko v. Cleveland Urology Assocs., Inc.*, No. 107498, 2019 WL 2233649, at *3-4 (Ohio Ct. App. May 23, 2019), *appeal not accepted*, 131 N.E.3d 76 (Ohio 2019) (table); *Peters v. Akron Gen. Med. Ctr.*, No. 29479, 2020 WL 563547, at *5 (Ohio Ct. App. Feb. 5, 2020). In contrast, Durrani intentionally inserted and left BMP-2 in Levandofsky's body. In such a case, the inserted matter "is not a foreign object trespassing in the body but rather [an improper device from a] negligently-performed surgery." *See Jonas*, 156 N.E.3d at 373. Courts handling Durrani-related litigation have repeatedly held that BMP-2 is not a foreign object.[1] *See id.*; *see also Powers v. Durrani*, No. 1:18-cv-788, 2020 WL 6596537, at *6 (S.D. Ohio Feb. 26, 2020); *Landrum v. Durrani*, No. 1:18-cv-807, 2020 WL 3512808, at *5 (S.D. Ohio Mar. 25, 2020).

Levandofsky's fraud and negligent hiring, supervision, and retention claims fall under the broad definition of "medical claims" in the statute of repose, so those claims are also barred. The

---

[1] Even if the foreign object exception did apply here, the one-year exception would have expired before Levandofsky filed this suit. The one-year exception would have started to run when Levandofsky and other plaintiffs sued Durrani in Ohio state court in 2014, at which point Levandofsky either knew or should have known that Durrani inserted BMP-2 during the surgery.

statute of repose defines "medical claim" as "any claim that is asserted in any civil action against a physician . . . and that arises out of the medical diagnosis, care, or treatment of any person." Ohio Rev. Code § 2305.113(E)(3). The statute further provides that a medical claim includes "derivative claims for relief." Ohio Rev. Code § 2305.113(E)(3)(a). The Ohio Supreme Court has emphasized that a fraud claim can be considered independent from an underlying medical malpractice claim only if "the decision to misstate the facts cannot be characterized as medical in nature." *Gaines v. Preterm-Cleveland, Inc.*, 514 N.E.2d 709, 713 (Ohio 1987). But here, Levandofsky's fraud and negligent hiring, supervision, and retention claims are closely related to the "medical diagnosis, care, [and] treatment" she received from Durrani. Ohio Rev. Code § 2305.113(E)(3). The basis for Levandofsky's fraud claim is her allegations that Durrani convinced her to undergo an unnecessary surgery, implanted BMP-2 without her consent, and misled her about the procedure. She further alleges that the Center for Advanced Spine Technologies negligently hired Durrani by enabling his unnecessary and harmful surgery, and that the Center committed fraud by falsely billing her insurance company for the surgery. Those allegations are nearly indistinguishable from, and derive from, Levandofsky's primary claim that Durrani negligently performed Levandofsky's surgery and follow-up care.

The Ohio Court of Appeals has repeatedly rejected Levandofsky's argument in the Durrani-related cases, holding that the plaintiffs' fraud and negligent credentialing claims fell under the broad definition of medical claims and as a result were barred by the statute of repose. *See McNeal*, 138 N.E.3d at 1237; *Freeman v. Durrani*, 144 N.E.3d 1067, 1071-72 (Ohio Ct. App. 2019), *appeal not accepted*, 141 N.E.3d 250 (Ohio 2020) (table); *Couch v. Durrani*, No. C-190703, 2021 WL 942849, at *2-3 (Ohio Ct. App. Mar. 12, 2021), *appeal not accepted*, 172 N.E.3d 1048 (Ohio 2021) (table); *Crissinger v. Christ Hosp.*, 106 N.E.3d 798, 804 (Ohio Ct. App. 2017); *Janson*

*v. Christ Hosp.*, No. C-200047, 2021 WL 1657633, at *6-7 (Ohio Ct. App. Apr. 28, 2021). The Ohio Court of Appeals noted in one case that "[c]lever pleading cannot transform what are in essence medical claims into claims for fraud." *Hensley v. Durrani*, No. C-130005, 2013 WL 5777076, at *5 (Ohio Ct. App. Oct. 25, 2013), *appeal not accepted*, 4 N.E.3d 1051 (Ohio 2014) (table). Levandofsky attempts to do the same here.

Durrani's flight from the country in 2013 did not toll the statute of repose, because the statute expired before Durrani fled. Levandofsky argues that Durrani's flight to Pakistan in December 2013 tolled the statute of repose under Ohio Rev. Code § 2305.15(A), which provides that "if the [defendant] is out of the state, has absconded, or conceals self, the period of limitation for the commencement of the action . . . does not begin to run until the person comes into the state or while the person is so absconded or concealed." But in this case the statute of repose expired in July 2013, before Durrani fled the country. The Ohio Court of Appeals concluded that § 2305.15(A) did not "rescue [plaintiffs'] complaints" when the statute of repose expired before Durrani fled. *McNeal*, 138 N.E.3d at 1236-37; *see also Stidham v. Durrani*, No. 1:18-cv-810, 2021 WL 2013024, at *4 (S.D. Ohio May 19, 2021). In cases in which courts tolled the statute of repose, Durrani fled while the four-year period was still running. *See Wilson v. Durrani*, No. C-180196, 2021 WL 4239657, at *3 (Ohio Ct. App. Sept. 17, 2021); *Elliot v. Durrani*, No. C-180555, 2021 WL 4026356, at *8 (Ohio Ct. App. Sept. 3, 2021).

The revocation of Durrani's medical license in 2014 does not affect the statute of repose analysis. Levandofsky argues that because Durrani was not a "physician" at the time she filed this lawsuit, the statute of repose does not apply. However, Levandofsky does not contest the fact that Durrani was a licensed physician when all of the relevant events occurred, including her surgery and follow-up treatment. Levandofsky's claims thus fall under the statute of repose, which covers

all "action[s] upon a medical . . . claim." Ohio Rev. Code § 2305.113(A). The text of the statute does not indicate that the revocation of a physician's license changes the nature of claims arising from events that occurred while the physician was properly licensed. The Ohio Court of Appeals has concluded that "[t]here is nothing to suggest that Durrani's subsequent loss of license changed the nature of [the] claims," so the license revocation "does not make the medical statute of repose inapplicable to this case." *Elliot*, 2021 WL 4026356, at \*9; *see also Jonas*, 156 N.E.3d at 370.

The text of the Ohio statute of repose does not include a fraud exception, and we have no basis to conclude that the Ohio courts would create one. The Ohio Supreme Court has repeatedly emphasized that the statute of repose should be interpreted according to its text, because the "plain language of the statute is clear, unambiguous, and means what it says." *Antoon v. Cleveland Clinic Found.*, 71 N.E.3d 974, 981 (Ohio 2016). The Ohio legislature could have included a fraud exception in the statute, but it chose not to do so. In one Durrani case, the Ohio Supreme Court did not apply the saving statute to the statute of repose and concluded that "[h]ad the General Assembly intended the saving statute to provide an extension of the medical statute of repose, it would have expressly said so . . . as it did in . . . the statute of repose that governs product-liability claims." *Wilson v. Durrani*, 164 Ohio St.3d 419, 429 (Ohio 2020). The Ohio Court of Appeals held that the "statute of repose is constitutional without a fraud exception," and several Ohio courts have similarly declined to create a fraud exception in Durrani cases. *See Freeman*, 144 N.E.3d at 1070-71 (relying upon *Crissinger*, 106 N.E.3d at 805); *see also Couch*, 2021 WL 942849, at \*4; *Janson*, 2021 WL 1657633, at \*6. The text of the Ohio statute of repose does not contain a fraud exception, and Ohio courts have repeatedly declined to create one.

We recognize that we have relied on Ohio law as stated by the Ohio Court of Appeals, not the Ohio Supreme Court, but that reliance is appropriate in this case. The Ohio Supreme Court

has not directly addressed the issues presented in this case. In such a case, we "must consider any available precedent from the state appellate courts, whether published or unpublished." *Lukas v. McPeak*, 730 F.3d 635, 638 (6th Cir. 2013) (relying on *West v. Am. Tel. & Tel. Co.*, 311 U.S. 223, 237 (1940)); *see also Meyers v. Cincinnati Bd. of Educ.*, 983 F.3d 873, 880 (6th Cir. 2020). State appellate court decisions are "authoritative absent a *strong showing* that the [state supreme court] would decide the issue differently." *Auburn Sales, Inc. v. Cypros Trading & Shipping, Inc.*, 898 F.3d 710, 715 (6th Cir. 2018) (alteration in original) (citation omitted). There is no indication here that the Ohio Supreme Court would disagree with the consistent decisions of the Ohio Court of Appeals. In fact, the Ohio Supreme Court has repeatedly declined to hear appeals from the Durrani cases, and "[s]tate appellate court precedent is to be considered particularly persuasive where the [state supreme court] has refused to review the decision." *Lukas*, 730 F.3d at 638.

Levandofsky's contention that the district court did not employ a de novo standard of review is without merit. The court considered and discussed the magistrate judge's recommendations, and stated that the court "made a de novo review of the record in this case."

We affirm the judgment of the district court.